H. Brin, Appellant, v. Charles Sidenstucker et ux., Appellees.

No. 46155.

March 9, 1943.

Prince & Evans, of Webster City, for appellant.

G. O. Blake, of Jewell, for appellees.

BLISS, J.—On June 25, 1940, Sylven Berg became a permanent guest in a hotel operated by the defendants in the town of Jewell. He both roomed and boarded at the hotel. While he was such a guest, and on December 23, 1940, he married, and he and his wife continued to board and room at the hotel. A few weeks prior to his marriage, Berg, upon hearing that a certain unfurnished room in the hotel was to be vacated on January 1, 1941, entered into an agreement with the defendants to rent the room as soon as it was available, at a rental of $20 a month, payable monthly. The room was vacated shortly after January 1, 1941, and Berg took possession of it on the morning of January 15, 1941, by moving into the room certain furniture and furnishings which he had acquired from the plaintiff on January 4, 1941, under a written lease or conditional sales contract. This instrument was not executed by both vendor and vendee as provided in section 10016, Code, 1939. Berg, only, executed and acknowledged its execution. He did both on January 4, 1941. It was filed for record in the office of the recorder of Hamilton county at 10 a. m. January 14, 1941, and indexed in the current book of chattel mortgages. This property, as described in the petition and the lease or conditional sales contract, and the prices thereof, were as follows:

| | |
|---|---|
| 1 Mahogany Vanity, Chest, Bed, Bench, 1 set of Lamps | $124.50 |
| 1 Nite Stand | 10.95 |
| 1 Spring | 11.95 |
| 1 Slumberwell Matt. | 19.75 |
| 2 27x54 Rugs | 7.90 |
| 1 Green Studio | 39.00 |
| 1 Chair to Match | 21.00 |
| 1 Rocker & Ottoman | 34.75 |
| 1 Walnut Buffet, 1 T 40½ Table, 6 Walnut Brown Leather Chairs | 94.00 |
| | $363.80 |

The room was not furnished in any manner when it was rented. It had neither toilet, laundry facilities, nor cooking equipment. The defendants had no furnished apartments. Berg and his wife occupied the room which they had rented and

furnished until August 16, 1941. During all of this time, up to July 10, 1941, they boarded at the defendants' hotel. On August 1, 1941, because of the nonpayment of the rent for the room and of money for their board, Berg and wife were dispossessed of the room. Defendants retained possession of the furniture and furnishings. The total combined charges against Berg and wife from June 25, 1940, to August 16, 1941, were $497.25. On this indebtedness Berg had paid $255, which the parties agreed should be credited upon the oldest charges. The balance of $242.25 was all for charges made after the renting of the room. Of this balance $140 was for room rent for seven months.

By the terms of the conditional sales contract the title and ownership of the property sold remained in the vendor until the purchase price was paid, and for specified breaches of the contract, or whenever the vendor might choose to do so, the vendor could repossess himself of the property. No part of the purchase price was ever paid. It was agreed that the defendants had no knowledge of either the existence of the contract or the filing of it for record until the writ of replevin was served on October 3, 1941.

In answer to plaintiff's petition for a writ of replevin and for damages, the defendants alleged the relationship of hotel-keeper and guest which existed between them and the Bergs, the furnishing of the board, lodging, etc. above noted, the nonpayment therefor, the bringing into the hotel of the property replevined, and its detention by virtue of the innkeeper's lien of defendants. They also alleged that neither of them had any proper notice of any conditional sale or lease, and that any such instrument was not executed as required by section 10016, Code, 1939.

The trial court rendered judgment dismissing the plaintiff's petition at his cost and ordering the replevined property to be restored to the defendants. In its judgment the court said:

"I infer from the record that defendant's hotel is an ordinary, standard small town hotel, engaged primarily if not entirely in furnishing accommodations for transients. I think without a doubt it is a 'hotel' within the meaning of Section

10348; that the defendant is a 'hotel keeper', that Sylven Berg and his wife were 'guests', and that the property in question was 'baggage', within the definitions of said section. This being so, defendant would be entitled to a hotel keeper's lien on all said furniture, under Section 10349, for the unpaid bill aforesaid.

"The furniture in question, however, had been purchased by Berg from the plaintiff on January 4th, 1941, under a conditional sales contract, or so-called lease, which was filed for record on January 14th, 1941, the contract appearing in evidence as Exhibit 'B'. Unfortunately for plaintiff this contract was not signed by him as vendor as required by Section 10016. Under this section the vendor's signature is a prerequisite to its validity as against a creditor without notice; and in this case it appears that defendant had no notice or knowledge of Exhibit 'B' or the lien claimed thereunder by plaintiff. It follows, as I think, that Exhibit 'B' cannot affect the landlord's lien of the defendant."

The cause was submitted to the trial court on a stipulation of the facts. The only issues below and the only issues before this court are those of law.

I. Did the appellees have a hotelkeeper's lien on this property under the provisions of chapter 458, Code, 1939? If they had no such lien, the judgment appealed from should be reversed. It is our conclusion that the appellees had no such lien. The appellees, in their answer, based their right to hold and to subject the property to the payment of their claim solely upon their innkeeper's lien. It was on such lien, or rather the statutory hotelkeeper's lien, and lack of notice of any right of the appellant, that the trial court based its judgment. The same grounds, for affirmance of the judgment, are urged upon this court. No contention has at any time been made of any rights on the part of the appellees because of any landlord's lien.

Appellant assigns as error the decision of the trial court that the appellees had a hotelkeeper's lien upon this property. It is his contention that the relationship between the appellees and the Bergs, with respect to this unfurnished room, was that

of lessor and lessee, or landlord and tenant, and not that of hotelkeeper and guest.

Whatever lien as hotelkeepers which the appellees may have against this property is given them by chapter 458, of the Code of 1939. The following sections are in this chapter:

"10348 Definitions. For the purposes of this chapter:

"1. 'Hotel' shall include inn, rooming house, and eating house, or any structure where rooms or board are furnished, whether to permanent or transient occupants.

"2. 'Hotelkeeper' shall mean a person who owns or operates a hotel.

"3. 'Guest' shall include boarder and patron, or any legal occupant of any hotel as herein defined.

"4. 'Baggage' shall include all property which is in any hotel belonging to or under the control of any guest."

"10349 Nature of hotelkeeper's lien. A hotelkeeper shall have a lien upon the baggage of any guest, which may be in his hotel, for:

"1. The accommodations and keep of said guest.

"2. The money paid for or advanced to said guest.

"3. The extras and other things furnished said guest."

The subsequent sections cover matters pertaining to the enforcement of the lien.

It is clear that the appellees operated a hotel, and that Berg and wife during the time they ate their meals at the hotel, up to July 20, 1941, were in that respect guests or boarders. They were also guests of the hotel insofar as they occupied a room furnished by the hotel prior to their occupancy of the room which they rented and furnished. The only question for determination is their relation to the appellees because of their renting and furnishing the bare room in the hotel building, and their occupancy of that room from January 15, 1941, to August 16, 1941. It is our conclusion that such relationship was neither that of a guest, roomer, nor patron of the hotel, but was that of lessee or tenant of the appellees. In Cedar Rapids Investment Co. v. Commodore Hotel Co., 205 Iowa 736, 738, 218 N. W. 510, 511, 56 A. L. R. 1908, the question was whether the occupant was a "roomer" or "lodger" in a "room-

ing house," or a housekeeper in an apartment. In holding that he was the latter, the court said:

"The defendant operated a hotel, but it also rented apartments. It may be that defendant rented rooms under such circumstances that it could be found to be operating a 'rooming house.' The same building may undoubtedly be operated as an inn and rooming house, eating house, and apartment house, as a single institution, and under the same management. Such operation, however, would not make the relationship between the proprietor and all of the occupants of the house of the one class either guests, roomers, or tenants. The defendant's relationship with some of them might be that of innkeeper and guests, and with others, that of landlord and tenants. * * * The room in a rooming house is usually in the immediate possession (when the occupant is not there) and dependent on the care of the proprietor. The apartment may be furnished with maid service, but it is understood to be in exclusive occupancy and use of the tenant as a sitting room and a home and for household purposes, as well as for sleeping purposes."

In 28 Am. Jur., Innkeepers, 549, section 16, the author states:

"The chief distinction between a tenant and a lodger apparently rests in the character of the possession. Generally, where the occupant of premises under a contract with the owner or proprietor has exclusive possession and control of the premises, he being responsible for the care and condition thereof, he is to be regarded as a tenant."

In Mathews v. Livingston, 86 Conn. 263, 267, 85 A. 529, 531, Ann. Cas. 1914A, 195, where the facts were somewhat similar to those in the case before us, the court said:

"* * * when it appears that the hirer of rooms in a building devoted to a lodging-house secures the exclusive possession of certain rooms therein, over which the lodging-house keeper retains no control, the law, in the absence of provision of the contract or extraneous circumstance indicating a contrary intention, will presume that it was the intention of the parties to

create the relation of landlord and tenant, and not that of lodging-house keeper and lodger.'' (Citing authorities.)

In that case the court stated that the facts that the care of the rooms rented was taken by the hirer, who procured her own board and furniture, and that the price charged was at the rate made to a tenant rather than a lodger, and the receipt read ''for rent,'' tended to show that the relation of tenant, and not of lodger, existed.

While the appellees operated a hotel, the relation existing between them and the Bergs was entirely different from that between them and the usual transient or roomer to whom they furnished all of the ordinary accommodations for his needs and comfort. It was different from the relation which existed prior to the time the Bergs occupied this room. A number of facts indicated that the Bergs were not guests of the appellees in their possession of this room. The appellees leased them this room, for which they were to pay ''rent'' by the month. It was a bare room—merely room space—which the Bergs rented. The appellees furnished merely the shelter. The Bergs furnished everything in the way of household goods to make it habitable as living quarters. While the record is silent as to who had the care of the room and its furnishings, it is a reasonable inference that the Bergs, who had possession of the furniture and were responsible for it, performed these duties. The room, as furnished, afforded something more than mere sleeping quarters. It was the home of the occupants. It was where they lived, rather than where they merely slept. It was a bedroom and living room combined. It had a buffet, dining table, and dining-room chairs, so that meals could be partaken of. It had a studio couch where a guest of their own might sleep. Their status with respect to the appellees was not different than if they had rented a room from the appellees in a building across the street from the hotel and furnished it and had taken their meals in the hotel. Simply because the vacant room which the Bergs rented and furnished and occupied was in a hotel did not make them guests of the hotel.

It is our conclusion that the Bergs did not occupy the room as guests of the appellees, and that the relation of guests or

roomers and hotelkeeper did not exist between them, and that the property replevined was not "baggage" as defined in Code section 10348(4), and that the appellees had no hotelkeeper's lien thereon, and were not entitled to its possession under such a lien.

It is not necessary to pass upon other questions raised. The judgment is, therefore, reversed, and the cause is remanded to the district court for judgment not inconsistent herewith.—Reversed and remanded.

All JUSTICES concur.