LILLIAN LEVESQUE *vs.* COLUMBIA HOTEL.

Cumberland.　　Opinion, November 21, 1945.

*Jacob H. Berman,*

*Edward J. Berman,*

*Sidney W. Wernick,* for the plaintiff.

*Bradley, Linnell, Nulty & Brown by William B. Nulty and Franklin G. Hinkley,* for the defendant.

SITTING: THAXTER, HUDSON, MANSER, MURCHIE, JJ. AND CHAPMAN, Active Retired Justice.

THAXTER, J.   This is an action of assumpsit brought to recover the sum of $4,850 which the plaintiff claims she deposited with the defendant for safe-keeping. After a verdict for the plaintiff, the case is before us on the defendant's exceptions and motion for a new trial. We shall consider only the exceptions.

The defendant owns and operates a hotel in the City of Portland. In July, 1943, the plaintiff interviewed the manager to find out on what terms she might obtain a room. She told him that she wanted it permanently, but nothing was said as to the length of time she would be there. She was told that the hotel had just the daily rate, but she could have the room on a weekly basis and pay six times the daily rate. She arrived at the hotel July 9th, registered, and was assigned room 132. She found that this room was too hot and later was transferred to room 107. Here she remained during the balance of 1943 and all of 1944. Statements were presented to her weekly and were paid. She took with her to the hotel her radio, a few pictures, and personal belongings. Except for these articles, the room was furnished by the hotel, which supplied the linen, and was taken care of by maids employed by the hotel. On occasions she went away for short stays but continued to pay for her room. She claims, and the jury appears to have found, that on December 29, 1944, she drew from a bank the sum of $4,850 and brought it back to the hotel. This money in bills she inserted in an envelope, wrote her name on it, sealed it, and then placed it in a larger envelope which she also sealed, wrote directions on this envelope to send it to her sister in New Hampshire should anything happen to her. She then inserted this in a third envelope

which she signed. She left her room with this envelope in her hand, and near the hotel office on the second floor met one Anne Goodrich who, she claims and the jury apparently found, was the assistant to the manager of the hotel. She and Miss Goodrich were friends. She gave Miss Goodrich the envelope telling her that there was money in it and that she wanted the hotel to keep it for her safely. Miss Goodrich placed the package in the safe in the upstairs office of the hotel. The plaintiff then left town for a few days returning shortly after New Year's. On the morning of January 9, 1945, it was discovered that the safe had been opened during the night and the plaintiff's money together with over $2,000 of the hotel money had been stolen. The jury evidently found, and we shall assume for the purpose of this opinion were warranted in finding, that Miss Goodrich as the duly authorized agent of the hotel received the money for safe-keeping and that it was lost by the negligence of the defendant.

The action is assumpsit and is based on the claim as set forth in the declaration that the plaintiff was not a guest of the hotel but was a permanent resident, and that the defendant received the money as a bailee and did not return it. The plea is the general issue with a brief statement setting forth that the plaintiff was a guest of the hotel, that the hotel had complied with the statute relating to innkeepers, and that it was entitled to the benefit of the statute which placed a limit on its liability to its guests. The brief statement further alleges that the defendant had kept the money in accordance with the instructions of the plaintiff and that in doing so it had exercised due care.

The issue involves the liability of the defendant as a hotel-keeper as that liability may be limited by the provisions of R. S. 1944, Chap. 88, Secs. 35 and 36. These sections read as follows:

35. "No innkeeper, hotel keeper, or boarding-house

keeper who constantly has in his inn, hotel, or boarding-house a metal safe or suitable vault, in good order and fit for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers, and bullion, and who keeps on the doors of the sleeping rooms used by guests suitable locks or bolts, and on the transoms and windows of said rooms suitable fastenings, and who keeps a copy of this section printed in distinct type constantly and conspicuously posted in not less than 10 conspicuous places in all in said hotel or inn, shall be liable for the loss of or injury to any articles or property of the kind above specified suffered by any guest, unless such guest has offered to deliver the same to the innkeeper, hotel keeper, or boarding-house keeper for custody in such metal safe or vault, and the innkeeper, hotel keeper, or boarding-house keeper has omitted or refused to take said property and deposit it in such safe or vault for custody and to give such guest a receipt therefor; provided, however, that the keeper of any inn, hotel, or boarding-house shall not be obliged to receive from any 1 guest for deposit in such safe or vault any property hereinbefore described exceeding a total value of $300, and shall not be liable for any excess of such property, whether received or not.

36. "Any such innkeeper, hotel keeper, or boarding-house keeper may, by special arrangement with a guest, receive for deposit in such safe or vault any property upon such terms as they may in writing agree to; and every innkeeper, hotel keeper, or boarding-house keeper shall be liable for any loss of the above enumerated articles of a guest in his inn, hotel, or boarding-house after said articles have been accepted for deposit,

if caused by the theft or negligence of the innkeeper, hotel keeper, or boarding-house keeper, or any of his servants."

At common law a hotelkeeper was an insurer of the property of a guest and was liable for loss or injury to it not caused by the act of God, the public enemy, or the neglect or fault of the owner or his servants. *Wagner* v. *Congress Square Hotel Company*, 115 Me., 190, 98 A., 660. From time to time this liability has been limited by statute. Our present law dates from 1913, P. L. 1913, Chap. 101. Sections 35 and 36 quoted above govern the problem before us. They are complementary and must be read together and harmonized.

The *Wagner* case supra, clearly shows that the innkeeper is not liable for the loss or injury of the articles enumerated in Section 35 if he complies with the conditions specified in that section, unless the guest has offered to deposit and he has omitted or refused to receive the articles for custody. If he does not comply with the the statute he is left under the old common law obligation as an insurer with this exception — that his liability is limited to $300 whether he receives the property or not.

Section 36 provides that the guest and the hotelkeeper may make in writing a special arrangement to receive such articles for deposit upon such terms as they may see fit. Then comes the provision, the meaning of which is in controversy in the present case. It provides that the hotelkeeper is liable for the loss of the enumerated articles after they have been accepted for deposit provided such loss is caused by the theft or negligence of the hotelkeeper or any of his servants. Counsel for the plaintiff maintain that for theft or negligence there is liability for the full value of the articles received for deposit irrespective of the $300 limitation set by Article 35. This might be true if we read Section 36 by itself and not in connection with Section 35. To construe it as suggested renders it inconsistent

with Section 35, the last provision of which would thereby become meaningless. It is clear that the court in the *Wagner* case did not so construe it. That opinion, referring to the deposit of the articles with the hotelkeeper says, page 194, 98 A., page 661: "If they were accepted, Section 2 (now Section 36) made him liable for theft or negligence afterwards by him or his servants. If he did not comply with the statute, it afforded him no protection as to liability for such articles. He was left under the common law liability. But the statute provided that an innkeeper should not be liable for the value of such property in excess of three hundred dollars, whether received or not." It is clear from this that the provision of Section 36 imposing the liability for theft or negligence, applies to the articles enumerated in Section 35 only after they have been received for deposit and that the limitation of three hundred dollars governs, not only the liability imposed by Section 35 for the omission or failure to accept the articles, but also the liability imposed by Section 36 for their loss by theft or negligence after they have been received.

This construction, first made in the *Wagner* case, not only renders the two sections of the statute harmonious, but is in accord with sound public policy. The hotelkeeper is not a banker; and he is not in the business of operating a safe deposit vault except as an incident to operating a hotel. It is not, therefore, unreasonable to restrict his liability for such incidental services rendered to his guests within such limits as will meet their ordinary needs. Those who carry with them large amounts of money or jewelry must take other measures for their protection. The added cost to the hotelkeeper of providing for such protection even as against the willful act or negligence of an employee, is in the last analysis one of his costs of operation reflected in the rates charged to all. Why should those guests who do not need such protection pay for the cost of those who do?

Counsel for the plaintiff have cited a number of cases as

authorities for their contention that this provision of Section 36 renders a hotel liable to a guest without restriction as to amount, if it accepts money for deposit and thereafter it is lost by the theft or negligence of the "hotel keeper . . . or any of his servants." Certain of the cases lend some support to this doctrine. *Leon* v. *Kitchen Bros. Hotel Company*, 134 Neb., 137, 277 N. W., 823, 115 A. L. R., 1078; *Shiman Bros. & Co.* v. *Nebraska Nat. Hotel Co.*, 143 Neb., 404, 9 N. W. (2d), 807; *Gillett* v. *Waldorf Hotel Co.*, 136 Wash., 615, 241 Pac. 14. But it is not without significance that the Nebraska court gives a much narrower interpretation of the provision limiting liability in a similar statute than does our court in the *Wagner* case, and holds that the statute has no application if negligence on the part of the defendant can be shown. This is in no sense the construction which has been put on our statute. The force of the Washington case is greatly weakened by a later case, *Goodwin* v. *Georgian Hotel Co.*, 197 Wash., 173, 84 P. (2d), 681, 119 A. L. R., 788, in which it is held, in construing a slightly different statute, which in substance we are unable to distinguish from our own, that the limitation of liability applied "to losses occasioned by the theft of an employee or by the gross negligence of the hotelkeeper or his, or its, employees." The other authorities cited either involve statutes which are different from ours or the provisions of which do not appear. As against these we have the rather definite implication in the *Wagner* case, that the limitation of liability in the case of a guest applies generally. Counsel for the plaintiff say that, if we put such a construction on the provision in question, the exemption would apply to a theft by the hotelkeeper himself. Of course it would not. The legislature may well have intended that the limitation should apply to theft by an employee; but it does not follow that it applies in case of theft by the hotelkeeper himself if an individual, or in case of wrongful appropriation if the defendant is a corporation. Theft by an employee would be theft from the bailee, theft by the hotel-

keeper himself would be theft from the bailor. See the discussion of this problem in *Millhiser* v. *Beau Site Company*, 251 N. Y., 290, 167 N. E., 447, and in *Goodwin* v. *Georgian Hotel Co.*, supra.

It is apparent, therefore, that, if the plaintiff was a guest of the hotel, its liability to her under the circumstances of this case, even though it may have been negligent in its care of the money, was limited to the sum of $300. The all important question accordingly is, as recognized by both sides, what does the statute mean by the word "guest."

The judge charged the jury as follows:

"A guest at a hotel is one who is transient, who comes temporarily, is perhaps a traveler or perhaps a person who is passing through a town only. It is temporary— for the time."

To this charge the defendant excepted, as well as to certain amplifications of it which appear to have impressed on the mind of the jury that the decisive consideration was the intent of the plaintiff with respect to her permanent tenure of the hotel room. One of these supplements to the above quoted passage follows closely the language of the court in *Norcross* v. *Norcross*, 53 Me., 163. Also the court below refused to give the two following instructions requested by the defendant:

"The word 'guest' as used in the statute relating to the liability of hotel keepers to their guests is not limited merely to a person who is a transient or traveler."

"A 'guest' of a hotel within the meaning of said statute is any person who registers at a hotel, receives, or may receive the usual services of the hotel, and who pays or is obligated to pay for his room and service whether it be by the day, week, or otherwise."

We believe that the two requested instructions as applicable to the facts of this case should have been given and that the

charge, which laid emphasis on the transient nature of a guest's status, was altogether too narrow. It is not a question of what the situation was eighty years ago when the Norcross opinion was written, when inns almost exclusively catered to wayfarers and travelers arriving over the highways by horse and buggy, when hotels in the cities seldom had as guests permanent boarders as they now do. The question is what, as applied to present day conditions, does the statute mean by the word "guest."

The word "guest" as used in the statute obviously has reference, not only to the patron of an inn, but to the patron of a hotel which may be of that type which primarily caters, not to transients, but to those who stay for a more or less indefinite time. A guest, according to the statute, also may be a boarder in a boarding-house, clearly not a person who is regarded as a transient, a wayfarer or a traveler. It accordingly seems to us clear that the legislature did not use the word "guest" in the narrow sense which had been given to it at common law. The lawmakers had in mind the ordinary, common, every-day meaning of the word. They were concerned, not with the technical distinctions of the common law, but used the word in the sense that the dictionary gives to it as a "person who lodges, boards or receives refreshment, for pay, at a hotel, boarding-house, restaurant, or the like, whether permanently or transiently."—Webster's New International Dictionary. This is the meaning given to it by other courts. For the distinction between a guest and one who is not, see the following cases: *Brin* v. *Sidenstucker*, 232 Iowa, 1258, 8 N. W. (2d), 423, 145 A. L. R., 359; *Knutson* v. *Fidelity Mut. L. Ins. Co.*, 202 Minn., 642, 279 N. W., 714; *Hart* v. *Mills Hotel Trust*, 258 N. Y. S., 417; *Driskill Hotel Co.* v. *Anderson* (Tex. Civ. App. 1929) 19 S. W. (2d), 216. See also 28 Am. Jur. 547. There are cases which fall very definitely on one side or the other of the line. If a room is rented for a definite period under such circumstances that the occupant assumes full control over it and does not receive the

ordinary services that the hotel offers to guests, the relationship of hotelkeeper and guest does not exist. There are of course border line cases. But where as here a person occupies a room in a hotel, registers as others do, receives maid service, and has the benefit of the other incidental services that the hotel gives, she is a guest, and this is true in spite of the fact that her stay there may be a long one and that she pays on a weekly or a monthly basis. The charge as given on this point was error and the instructions requested by the defendant should have been given.

Possibly the views here expressed may finally dispose of this case. On the chance that it may be retried, we should perhaps discuss the exception to that portion of the charge relating to the burden of proof. The declaration alleges that the plaintiff was not a guest; and the trial proceeded on the theory that the defendant thereby became liable as a bailee, if through its negligence the money of the plaintiff was lost. The judge charged the jury that under such circumstances the burden was on the defendant "to show that no lack of due care on its part was responsible for the non-delivery of the money." This was error. The rule is settled in this state that, whatever the form of action, the burden is on the bailor to prove negligence, not on the bailee to prove due care. *Dinsmore* v. *Abbott*, 89 Me., 373, 36 A., 621; *Sanford* v. *Kimball*, 106 Me., 355, 76 A., 890, 138 Am. St. Rep., 345; *Chouinard* v. *Berube*, 124 Me., 75, 126 A., 180. It is unnecessary to cite further cases. This error apparently arose from confusing the burden of proof with what constituted a *prima facie* case.

*Exceptions sustained.*