NUMISMATIC ENTERPRISES, Mark L.
Teller and Norman Applebaum,
Plaintiff,

v.

HYATT CORPORATION, Defendant.

No. IP 90–921–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 13, 1992.

Jerry Garau, Barbara J. Germano, Price
& Shula, Indianapolis, Ind., for plaintiff.

Stephen M. Terrell, Ice Miller Donadio &
Ryan, Indianapolis, Ind., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

NOLAND, District Judge.

This matter comes before the Court on the following pleadings and papers:

1. the plaintiffs' Amended Complaint,

2. the defendant's Answer to Plaintiff's Amended Complaint,

3. the defendant's Motion for Summary Judgment, Brief and Submission of Materials in Support thereof, Statement of Material Facts, Proposed Conclusions of Law and Proposed Summary Judgment,

4. the plaintiffs' Brief in Opposition to Motion for Summary Judgment, Statement of Genuine Issues, and Submission of Materials in Opposition to Motion for Summary Judgment, and

5. the defendant's Reply Brief in Support of Motion for Summary Judgment.

The Court having carefully considered the foregoing pleadings and papers, and being duly advised, concludes that the defendant's Motion for Summary Judgment should be granted. The plaintiffs shall accordingly take nothing by way of their Amended Complaint.

IT IS SO ORDERED.

## MEMORANDUM ENTRY

### I. *Factual Background*

The facts in this case are essentially undisputed. *See Brief in Support of Defendant's Motion for Summary Judgment*, p. 2, n. 1; *Plaintiffs' Brief in Opposition to Motion for Summary Judgment*, p. 1. On April 6, 1988, plaintiffs Mark L. Teller and Dr. Norman I. Applebaum (a retired pharmacologist), partners in plaintiff M. Louis Teller Numismatic Enterprises (hereinafter "Numismatic Enterprises"), a California partnership with annual sales of nearly one (1) million dollars which was in the business of buying and selling rare coins, traveled to Indianapolis, Indiana, to attend the 49th Annual Central States Numismatic So-

ciety Convention (as the partnership had done every year since 1973). *Teller Deposition*, pp. 4–5, 8, 21–25, 37. Numismatic Enterprises is one (1) of the United States' major dealers in rare coins, and the plaintiffs typically attended twenty (20) to thirty (30) such coin shows per year in New York City, San Francisco, Tampa, Long Beach, Hong Kong, London and Singapore. *Id.*, pp. 19–20, 22–24.

Plaintiffs Teller and Applebaum were attending the Convention (hereinafter "Coin Show") to buy and sell coins and otherwise conduct partnership business on the partnership's behalf. *Teller Deposition*, pp. 21–25, 37. They brought with them from California a large black double combination lock briefcase which contained virtually the entire partnership inventory of rare coins as well as the paraphernalia which Teller and Applebaum required to transact business. *Teller Deposition*, pp. 38–40, 43. The rare coins which Teller and Applebaum brought with them to the Coin Show are asserted to have had a total value of over $300,000.00.

After the plaintiffs had arrived at the Indianapolis International Airport and taken a taxicab to the Hyatt Regency–Indianapolis,[1] which is operated by defendant Hyatt Corporation, they registered at the Hyatt Regency's front desk and proceeded to inquire about safe deposit boxes. *Teller Deposition*, pp. 37, 43; *Hyatt Answer to Amended Complaint*, p. 1, ¶ 3. Plaintiff Teller informed the Hyatt employee who was assisting him (who was later referred to during Teller's deposition as "Ms. Atkinson") that he was with the coin show and that he and Applebaum would need a safe deposit box. *Teller Deposition*, pp. 49–50, 63.

Although plaintiff Teller was aware from reading the Coin Show brochure that there was a security room available at the Indiana Convention Center for participating dealers, and he and plaintiff Applebaum had taken a taxicab from the Airport,

---

**1.** In the brochure which had been sent to coin dealers interested in attending the Show, the Hyatt Regency was referred to as the Society's "base hotel." *Defendant's Exhibit 2* (attached to

*Teller Deposition*). The brochure, however, provided a list of several other local hotels and their telephone numbers. *Id.*

they chose not to walk or take a taxicab to the Convention Center to deposit their inventory for safekeeping, both because "[i]t was pouring rain" when they arrived, and because they had previously stored their inventory at the hotels where they had stayed during other coin shows. *Teller Deposition*, pp. 60–62.

The plaintiffs were taken to the Hyatt Regency's safe deposit box area and assigned box number 120. *Teller Deposition*, pp. 45–46. They deposited their inventory of coins in the safe deposit box, in Atkinson's presence, and plaintiff Teller was given the one (1) of the two (2) keys which were required to open the box. *Teller Deposition*, pp. 37–38, 46–47, 50–51, 55.

At the time that the plaintiffs deposited their inventory of coins in the safety deposit box, plaintiff Teller signed and was provided a copy of a document entitled "Safe Deposit Box Record." *Exhibit A* to plaintiffs' *Amended Complaint; Affidavit of Mark L. Teller*, pp. 1–2, ¶ 5. Handwritten on the Safe Deposit Box Record was plaintiff Teller's name and permanent address, as well as his room and box numbers. *Id.* Plaintiff Teller signed the Safe Deposit Box Record at approximately 8:10 P.M. *Id.* Significantly, the Record contained a section, which comprised approximately one-third (⅓) of the form and was in a readable size print, entitled "Rules and Regulations Governing Safe Deposit Boxes." *Id.* Two (2) of the rules or regulations contained therein provided as follows:

4. The box is leased to the lessee for the purpose of keeping securities, jewelry and valuable papers only, and the lessee agrees not to use the box for any other purpose including keeping money therein. It is expressly understood and agreed that the duty of the lessor with respect to any securities, jewelry and valuable papers is limited to the exercise of ordinary care in preventing access to the box by unauthorized persons, or destruction of any property, including money, alleged to have been placed in the box.

> \*   \*   \*   \*   \*   \*

7. The Hyatt Regency Indianapolis does not take possession of property in safe deposit boxes. Deposits therein shall in no event constitute bailment.

*Id.*

The plaintiffs failed to provide written notice to the Hyatt Regency–Indianapolis of the fact that they were bringing merchandise onto the premises, nor did they provide the Hotel with notice, written or otherwise, of the estimated value of their inventory of rare coins. *Teller Deposition*, pp. 63–64.

On the morning of April 7, 1988, plaintiff Teller opened the safe deposit box in order to retrieve its contents. *Teller Deposition*, pp. 54–56. Unfortunately, when the box was opened the case and its contents were missing. *Id.*

Ultimately, two (2) individuals, William LaBarre and Stephan Sbarcea, were arrested for theft of the coins and possession of stolen property. *Teller Answer to Interrogatory No. 18.* They pleaded guilty and were sentenced in the United States District Court for the Eastern District of Michigan. *Id.* While a large percentage of the plaintiffs' rare coins were ultimately recovered, the plaintiffs assert that coins worth in excess of $128,000 are still missing. *Teller Answer to Interrogatory No. 13.*

On April 3, 1990, the plaintiffs filed their original Complaint in the Marion County (Indiana) Superior Court. Seventeen (17) days later, defendant Hyatt Corporation removed this action to the United States District Court for the Southern District of Indiana. On March 11, 1991, the plaintiffs filed their Amended Complaint, with leave of Court, adding a claim for punitive damages. *Amended Complaint*, pp. 2–3, ¶¶ 12–15. The defendant has since moved for summary judgment.

## II. *Discussion and Decision*

### A. Jurisdiction

This action was removed pursuant to 28 U.S.C. § 1446. In its Notice of Removal, defendant Hyatt Corporation submits that the Court has original jurisdiction over the parties' dispute pursuant to 28 U.S.C. § 1332 because it "is a civil action where

**690**

the matter in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs, and is between citizens of different states." *Notice of Removal,* p. 2, ¶ 4. Although the amount which the plaintiffs seek to recover for the theft of their rare coins (over $128,000.00) exceeds the Diversity Jurisdiction Statute's amount in controversy requirement, *see Teller Answer to Interrogatory No. 13,* the parties are also required to satisfy the Statute's diverse citizenship requirement in order for the Court to have jurisdiction.

■ While the Amended Complaint states that defendant Hyatt Corporation "is a corporation with its principal place of business in Chicago, Illinois[,]" *Amended Complaint,* p. 1, ¶ 4, the plaintiffs neglect to indicate where (i.e., in what state or states) the defendant is incorporated. Title 28 U.S.C. § 1332(c)(1) specifically provides that a corporation is a citizen of the state where it has its principal place of business *and* "of any State by which it has been incorporated." *See Galva Foundry Co. v. Heiden,* 924 F.2d 729–730 (7th Cir.1991). However, inasmuch as it is undisputed that the Hyatt Corporation is *not* a citizen of the State of California by virtue of its principal place of business *or its state of incorporation,* the Court concludes that the diverse citizenship requirement is satisfied.

■ Despite the fact that (1) Teller (the general partner) and fellow partner Applebaum are citizens of the State of California, *Amended Complaint,* p. 1, ¶¶ 1–3, and (2) defendant Hyatt Corporation is a citizen of the State of Illinois, which would ordinarily satisfy the diverse citizenship requirement, a cursory reading of Teller's deposition leads to the question of whether fellow-numismatist Dr. Augusto Wing, who was mentioned during Teller's deposition testimony, might also be a partner in Numismatic Enterprises. Teller testified dur-

ing his deposition that he (Teller) owns two-thirds (⅔) of the Numismatic Enterprises, that Applebaum owns one-third (⅓), and that although Wing had not made a capital contribution to the partnership he was what might be called "a nonspecified partner" because he is paid a percentage of the value of the business at the end of the year "if there is a percentage." *Teller Deposition,* pp. 5, 7. Teller further testified that Wing took care of the partnership's "office functions" and assisted at coin shows. *Id.,* p. 8.

While diversity would be destroyed if Wing were found to be a partner in Numismatic Enterprises *and* a citizen of the same state as defendant Hyatt Corporation, *Market Street Associates Ltd. Partnership v. Frey,* 941 F.2d 588, 589–590 (7th Cir.1991) (*citing Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)),[2] the Court concludes on the present record that Wing was not a partner and that there is therefore no need to inquire into his citizenship in determining whether the parties are diverse.

The Court's conclusion that Wing was not a partner in Numismatic Enterprises at the time of the events giving rise to this action is based upon the totality of the circumstances and certain inferences drawn from the facts. Although not conclusive, it is undisputed in this case that Wing did not contribute capital to the partnership. Wing performed services for the partners and was compensated for doing so, but there is no evidence or suggestion by the parties that he was involved in the partnership decision-making process, that he shared in partnership losses, or that he was performing services in order to become an "owner" together with Teller and Applebaum. Finally, Teller's description of Wing as "[what] you might call ... a nonspecified partner" is hardly probative of his legal status *vis-a-vis* the partnership, espe-

---

**2.** In *Market Street,* Judge Posner cautioned the bench and bar that:

"it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care and to be particularly alert for jurisdictional problems in diversity cases in which one or more of the parties is neither an indi-

vidual nor a corporation. For it is with respect to the other, the unconventional entities—two of which, a partnership and a trust, are involved in this case—that mistakes concerning the existence of diversity jurisdiction are most common."

*Id.,* 941 F.2d at 590.

cially given Teller's further description of Wing as "an employee." *Teller Deposition,* p. 7.

## B. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure states in pertinent part that summary judgment shall be granted forthwith if the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (Emphasis in original).

■ In determining whether a genuine issue of material fact exists, the trial court must view the record and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party. *Spring v. Sheboygan Area School District,* 865 F.2d 883, 886 (7th Cir.1989). At the summary judgment stage, the trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

"A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. Fitchburg,* 870 F.2d 1327, 1329 (7th Cir. 1989) (*quoting Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511). In other words, summary judgment may be granted if the evidence favoring the nonmoving party "is merely colorable or is not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted). Furthermore,

Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Anderson,* 477 U.S. at 256–257, 106 S.Ct. at 2514; *see also First Bank Southeast, N.A. v. Predco, Inc.,* 951 F.2d 842, 846 (7th Cir.1992). Thus, the summary judgment inquiry addresses "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. In making this inquiry, the trial court "should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues when there are none....'" *Secretary of Labor, United States Dept. of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987), *cert. den. sub nom.,* 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988) (*quoting Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir. 1972)).

## C. Noncompliance With the Indiana Innkeepers Statute

■ The defendant argues that it is entitled to summary judgment because the plaintiffs failed to comply with the Indiana Innkeepers Statute (Indiana Code § 32–8–28–3). *Brief in Support of Motion for Summary Judgment,* pp. 4–7. According to the defendant, the Statute absolves the defendant from liability because, paraphrasing the Statute, the plaintiffs did not provide the Hotel with "written notice of [their] having brought such merchandise [ (i.e., the rare coins) ] into the hotel and of the value thereof." *Brief in Support of Motion for Summary Judgment,* p. 1. The defendant observes that the Safe Deposit Record cannot be considered a written notice under the Statute because it does not state that plaintiff Teller was bringing merchandise into the Hyatt Regency, the value of said merchandise, and because a representative of the Hyatt Regency did not acknowledge in writing that the Hotel had received notice. *Id.,* at 5–6 (*citing*

*Eichberg & Co. v. Van Orman Ft. Wayne Corp.*, 248 F.2d 758, 760 (7th Cir.1957), *cert. den.*, 356 U.S. 927, 78 S.Ct. 716, 2 L.Ed.2d 759 (1958) (construing statutory predecessor to I.C. § 32–8–28–3)).

The plaintiffs argue that the defendant has waived its rights under the Indiana Innkeepers Statute and, alternatively, that it should be estopped from asserting its statutory rights given the circumstances. *Plaintiffs' Brief in Opposition to Motion for Summary Judgment*, pp. 2–6. First, the plaintiffs argue that the defendant waived its rights under the Statute when it made the representation in the Safe Deposit Box Record that it was assuming a duty of ordinary care in preventing access to the safe deposit box by unauthorized persons. *Id.*, p. 3–4. Second, the plaintiffs argue that the defendant should be estopped from asserting its rights under the Indiana Innkeepers Statute as an affirmative defense because the Hotel led the plaintiffs to believe, through its conduct, that it was assuming a duty of ordinary care with respect to the contents of the box. *Id.*, pp. 5–6. The plaintiffs submit that the defendant "invited the coin show" to the Hotel and therefore should have had sufficient security to take care of the coin dealers' needs. *Id.* The plaintiffs add that the defendant failed to reveal the fact that it was seeking to limit its liability. *Id.* For the reasons which follow, the Court concludes that the plaintiffs' arguments are without merit, and that the defendant's Motion should be granted.

The Indiana Innkeepers Statute provides as follows:

*A hotel,* apartment hotel, or inn, or the proprietor or manager thereof, *shall not be liable for the loss of* or damage to any merchandise samples or *merchandise for sale, whether such loss* or damage *is occasioned by the negligence of such proprietor or manager or his agents or otherwise, unless the guest or other owner shall have given prior written notice of having brought such merchandise into the hotel and of the value thereof, the receipt of such notice shall have been acknowledged in writing by the proprietor, manager or other agent*

and in no event shall such liability exceed the sum of four hundred dollars ($400.00) unless the manager or proprietor of such hotel, apartment hotel, or inn shall have contracted in writing to assume a greater liability.

Indiana Code § 32–8–28–3 (Emphasis added). "The statute discloses a legislative intent to alleviate the common law rule by limiting the amount of an innkeeper's liability." *Plant v. Howard Johnson's Motor Lodge,* 500 N.E.2d 1271, 1273 (Ind.App. 1986), *tran. den.,* 514 N.E.2d 1048 (Ind. 1987).

As the defendant argues in its pleadings, the Indiana Innkeepers Statute clearly and unambiguously requires *written notice* to a hotel or inn stating (1) that a guest is bringing merchandise into the hotel, and (2) the value of thereof, if the guest desires to hold the hotel or inn responsible for damages in the event that the guest's merchandise is lost, stolen or damaged while it is in the possession of the innkeeper. The Statute imposes the additional requirement that receipt of the notice must be acknowledged *in writing* by the hotel's proprietor, manager or other agent, and limits the hotel's liability, assuming sufficient notice is given, to $400.00 unless the proprietor, manager or other agent enters into a written contract to assume greater liability.

In the present case, there does not appear to be any dispute that the plaintiffs failed to comply with the Statute's requirements. Although it might be argued that the Hotel had sufficient notice under the Statute as a result of its employee's observation of the coins and her conversation with plaintiff Teller, this argument ignores the fact sufficient notice under the Indiana Innkeepers Statute requires more than the mere statement that merchandise is being brought into a hotel or inn.

The Court finds persuasive the defendant's argument that the Safe Deposit Record cannot be construed as sufficient notice under the Indiana Innkeepers Statute because it did not inform the Hyatt Regency of the fact that the plaintiffs were bringing their merchandise into the Hotel

or the estimated value thereof. Although the Hyatt Regency's agent (Atkinson) signed the Safe Deposit Record, thereby witnessing plaintiff Teller's execution of the form (and, at least implicitly, the fact that Teller had read the "Rules and Regulations Governing Safe Deposit Boxes"), her signature hardly constitutes a written acknowledgement that the Hotel had received sufficient notice under the Statute. Even if Ms. Atkinson's signature could somehow be interpreted as the equivalent of a written acknowledgment that plaintiff Teller was bringing merchandise into the Hotel (on the theory that Teller provided Atkinson and her employer with "notice" of that fact when he (1) told her he was with the Coin Show, and (2) proceeded to place the partnership inventory in the safe deposit box while in her presence), it would nevertheless fail as to constitute a valid acknowledgement. Under the Statute, an innkeeper's agent must acknowledge notice which includes a declaration of the value of the guest's merchandise. As the Seventh Circuit observed some time ago in *Eichberg & Co. v. Van Orman Ft. Wayne Corp.,* *supra,* 248 F.2d at 760, a well-reasoned case which addresses the issue raised in the present case, such notice and acknowledgment are required in Indiana for a salutary reason—"to protect innkeepers from undisclosed excessive liability." *Id.*[3]

Inasmuch as the plaintiffs failed to satisfy the Indiana Innkeepers Statute, their right to recover against the defendant is cut off unless they are able to demonstrate that the defendant has waived, or should be estopped from asserting, its rights under the Statute. The plaintiffs' argument that there are factual issues remaining which preclude summary judgment, one (1) issue being whether the defendant waived its rights under the Statute when it made the representation in the Safe Deposit Box Record that it was assuming a duty of ordinary care in preventing access to the safe deposit box by unauthorized persons, ignores the fact that language used in the Safe Deposit Box Record limited the Hotel's duty of ordinary care to certain personal property and did not purport to assume a duty with respect to merchandise. The Record explicitly stated that the safe deposit box had been "leased to the lessee for the purpose of keeping securities, jewelry and valuable papers only," that the lessee agreed *not* to use the box for any other purpose "including keeping money therein," that the parties had *not* entered into a bailor/bailee relationship, and that the Hotel's duty of ordinary care was limited to the specific items mentioned in the Record (securities, jewelry, and valuable papers).

The undisputed facts also fail to support the plaintiffs' estoppel argument. Given the fact that the same brochure which described the Hotel as the Coin Show's "base hotel" stated that there were other local hotels available to dealers and that there was a security room available at the Coin Show, the Court concludes that the Hotel did not implicitly hold itself out to dealers as a place where they could deposit their merchandise for safekeeping.

## III.   *Conclusion*

For the foregoing reasons, the Court concludes that the defendant's Motion for Summary Judgment should be GRANTED. Judgment is hereby entered in favor of the defendant and against the plaintiffs. The plaintiffs shall accordingly take nothing by way of their Amended Complaint.

---

**3.** In its Reply Brief, the defendant cites a district court decision wherein a similar Missouri Innkeepers' Statute was interpreted. *Defendant's Reply Brief,* p. 3. The Missouri District Court's analysis in this regard is compelling:

> The hotel keeper is not a banker; and he is not in the business of operating a safe deposit vault except as an incident to operating a hotel. It is not, therefore, unreasonable to restrict his liability for such incidental services rendered to his guests within such limits as will meet their ordinary needs. Those who carry with them large amounts of money or jewelry must take other measures for their protection.

*Link—Simon, Inc. v. Muehlebach Hotel Inc.,* 374 F.Supp. 789, 795 (W.D.Mo.1974) (*quoting Levesque v. Columbia Hotel,* 141 Me. 393, 44 A.2d 728, 730 (1945)).