Ellen B. MOYER et al.

v.

BOARD OF ZONING APPEALS.

Supreme Judicial Court of Maine.

Sept. 26, 1967.

Theodore H. Kurtz, Portland, for appellants.

Charles P. Barnes, II, Portland, for appellee.

Before WILLIAMSON, C. J., and MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

The five plaintiffs are residents of the Town of Cape Elizabeth occupying properties adjacent to or in the immediate vicinity of the parcel of land owned by one William H. Bruce at 960–970 Shore Road in said town. They appealed to the Superior Court from the majority (3 to 2) decision of the defendant Board of Zoning Appeals for said Town of Cape Elizabeth permitting the erection of a proposed building to be used as a "hotel" in a "Residence C" zone. The Superior Court judgment of "Appeal denied. Decision of Zoning Board of Appeals affirmed" is before us on further appeal.

The record depicts with particularity the background of this hotly contested litigation. The building still standing on the reference lot was previously used as a hotel, but, in the language of the Board, "its operation had dwindled and the property deteriorated of late years, creating an unattractive and undesirable stand of buildings; which it is felt is rapidly becoming a fire hazard to the neighboring wooden buildings, as well as a potential vandals' retreat".

Mr. Bruce originally sought permission to replace the old dilapidated hotel buildings by an apartment house building at an approximate cost of $500,000 containing some 34 or more luxury apartment units to rent for $160 to $275 per month. The proposed building would have occupied less than 6,600 square feet, i. e. less than 10% of the total area involved. The Board unanimously denied permission on the ground that the proposed construction of luxury apartments as contemplated by Mr. Bruce was not permissible under the zoning ordinance of Cape Elizabeth as the latter did not provide for any such apartment building within the town. This denial by the Board was made on April 22, 1966. No appeal was taken from that ruling.

In August of the same year, Mr. Bruce applied anew for a building permit, but on this occasion he sought permission to construct a hotel. His application came to the Board on appeal from the denial of the permit by the Building Inspector of the Town of Cape Elizabeth. Mr. Bruce's proposal contemplated a building containing 36 units divided evenly among one, two and three room suites, to be furnished as required to accommodate the desires of the occupants who did not care to bring in their own furnishings. Each suite had a bathroom and kitchenette arrangement. The structure of wood with brick veneer would be two stories in height in part but three stories high in major part, occupying an area approximately 164 feet in length and 56 to 60 feet in width. In the language of the Justice below, there would be an outdoor swimming pool, facilities for sewerage treatment, inside and outside parking, landscaping, a furnished lobby, a vault for the safekeeping of valuables and an attendant on duty. The applicant further proposed to conform to all requirements of law imposed upon hotels and in particular to the provisions of 30 M.R.S.A. § 2751 (license), § 2753 (bond), §§ 2703, 2803 and 2901 (displaying statutory notices) and § 2801 (register). The applicant offered, but only if so required by the Board, to maintain a simple coffee shop to serve the needs of the residents of the building. The applicant represented to the Board that he anticipated that the proposed building would attract older couples, widows and widowers who might make this building their principal residence, and that it would also attract couples waiting for a home to be built, businessmen on temporary assignment and other persons in a comparable transient status. He indicated to the Board that he intended to require occupants to enter into a lease for at least thirty days and to charge the monthly rates of $167.50 for one-room suites, $200 for two-room suites and $250 for three-room suites.

At the hearing before the Board, 18 area residents registered their approval giving as one of their reasons for agreeing the fact that the proposed use was preferable to the existing run-down condition of the buildings now standing on the land, that no greater noise nor traffic hazards would be created, and increased tax revenue to the town would result. Twenty-one were opposed to granting the permit stating that the proposed use was that of an apartment house and not of a hotel, and that resulting traffic, noise, sewage disposal and noxious odors from garbage and trash disposal would be detriments to the area. The Board in granting the application before it stipulated certain requirements upon which the permit was conditioned. It spelled out the sewerage treatment to be installed. It provided for a change in the set-back on the northerly side of the lot. It proscribed the use of flashing neon-type signs and subjected the operator of the alleged hotel to compliance with local ordinances respecting signs, smoke, odors and the like, as well as to statutory compliance regarding licenses, posting of notices, maintenance of a register and metal safe for safekeeping of moneys and valuables of occupants. With material significance, the Board provided as its third condition that "no cocktail lounge, coffee shop, or public dining room is to be installed initially or subsequently, in the hotel while located on this site. *This to insure the residential aspect of the hotel*". [Emphasis supplied.] The Board concluded with the following language: "It is felt by the Board that a well run hotel on this site will attract high caliber occupants of good taste, respectable conduct, *with consideration for the community*, and who will enjoy an appreciation of their aesthetic surroundings." [Emphasis added.]

At the hearing before the Justice presiding, with his consent and over the objections of the opponents, the applicant was permitted to make certain changes in the proposed use of the building to be constructed. He changed the dimensions of the building to comply with the condition imposed by the Board enlarging the set-back. He further proposed daily and weekly rates whereas in his original plan only monthly rates were contemplated. He indicated abandonment of the requirement that each occupant sign a lease for at least thirty days. He added regular maid and linen service. The presiding Justice ruled that such changes as applicant's abandonment of any required minimum period of occupancy and the added maid and linen service, together with the new rate structure taking into account for the first time daily occupancy as well as occupancy by one or more than one person, could not be viewed as anything that substantially changed the original proposal before the Board. With this, we disagree.

The Board expressly indicated in its decision that it wanted to insure the residential aspect of the hotel by proscribing at any time in the future any cocktail lounge, coffee shop or public dining room. Also, when it indicated in its conclusions that it felt that the hotel, well run, would attract "high caliber occupants of good taste, respectable conduct, *with consideration for the community*," it could hardly have had in mind any other facet of the proposed use than the fact that this hotel would not cater to transients of diversified allegiances but would only accept permanent guests whose minimum sojourn of 30 days in the community would be consistent with the Board's obvious policy to maintain in the residential district such as this site is located in, community spirit, understanding and consideration. The 30 day minimum period of occupancy required of all prospective tenants of the building was of utmost significance to the Board. Permanent residency was favored by them as reflected by their statement of decision in an attempt to foster in the occupants of the alleged hotel local community spirit. Stripping the proposed use of this minimum occupancy requirement could very well have resulted in the Board's refusal to approve such apartment house type hotel structure. Reg-

ular linen and maid service on the other hand is a chief distinctive feature of a hotel as that term is understood either at common law or in present day society, and is expected by the traveling public.

The pertinent portions of the zoning ordinance applicable in the instant case are as follows:

1) *"Sec. 3. Definitions.*

For the purposes of this ordinance, the following terms, words and phrases shall have the meanings given herein.

F. *Dwelling*: a building containing one or more dwelling units and used for human habitation.

G. *Dwelling Unit*: a room or group of rooms forming a habitable unit for one family with facilities used or intended to be used for living, sleeping, cooking and eating.

I. *Garden Apartment House*: a structure designed to consist of four or more dwelling units, laid out in such a manner that no one must ascend or descend more than 1½ stories from the level of the outside entrance in order to reach a room in his dwelling unit. Any apartment house in which more than two stories are to be occupied by dwelling units shall be of Type I or Type II construction as defined by the Town Building Code (B.O.C.A., abridged). The residential density of the lot shall not exceed 6 dwelling units per acre exclusive of public streets."

\*     \*     \*     \*     \*     \*

2) *"Sec. 4. Establishment and Regulations of Zoning Districts.*

B. *Residence B and C District—Permitted Uses*

The following buildings or uses only are permitted in Residence B and C Districts:

\*     \*     \*     \*     \*     \*

(2) *hotel,* motel, *garden apartment house,* rooming house, tourist cabin or tourist home, medical or dental offices or clinic, *subject to the approval of the Board of Appeals;"* [Emphasis added.]

\*     \*     \*     \*     \*     \*

3) *"Sec. 5. Area and Width of Lot; Building Setbacks; Parking.*

D. *Parking*

In all districts, off-street parking spaces shall be provided in connection with each new use or change in use, or the erection of any structure, in at least the following amounts: *residential:*

one space for each dwelling unit;

one space for each bedroom of a hotel, motel, or tourist cabin;" \* \* \*.

\*     \*     \*     \*     \*     \*

4) *"Sec. 8. Administration and Enforcement.*

C. *Board of Appeals*

(2) *Jurisdiction*

(a) The Board of Appeals exclusively shall have the following powers and duties to be exercised only upon written appeal by a party aggrieved by a decision of the Building Inspector:

(1) to determine whether the decision of the Building Inspector is in conformity with the provisions of this ordinance, and to interpret the meaning of the ordinance in all cases of uncertainty.

(b) The Board shall also have the power to authorize the issuance of permits for any of the conditional uses of land or buildings permitted in the various districts provided that the conditions prescribed in each case are observed, and provided that the Board is satisfied that the proposed conditional use will not adversely affect the value of adjacent properties and that it will

not substantially depart from the intent and purpose of this ordinance. In granting an appeal for a variance or for a conditional use, the Board may impose such restrictions concerning timing, siting, landscaping, signs, curb cuts and the like as it considers advisable in order to protect adjacent properties and to promote the public welfare."

Thus, the zoning ordinance of the Town of Cape Elizabeth permits in "Residence C" districts a "hotel" building or use, *but only with the approval of the Board of Appeals*, provided that the Board is satisfied that the *proposed* conditional use will not adversely affect the value of adjacent properties and that it will not substantially depart from the intent and purpose of the ordinance. The zoning authorities are invested by the ordinance with the power and duty to determine originally whether a proposed conditional use should be allowed, what effect it will have on adjacent properties and whether it is within the spirit of the ordinance. In discharging such responsibility, local boards of appeal are expected initially to pass upon any such issue as may arise under the zoning ordinance, and determine the same in the exercise of a liberal discretion, with court action therein in the nature of an appellate review and not as an original proceeding. It is not permissible within the policy of zoning statutes or ordinances at the appellate level to change any of the substantial aspects of an applicant's proposed building or use from what the original proposal was before the Board of Zoning Appeals. The issue before the Court on appeal must be substantially the same as the issue passed upon by the Board of Zoning Appeals. The Justice below found that the Board's approval was not arbitrary, unreasonable or capricious, but this finding was made respecting a proposed *building* or *use* which was *not before the* Board for its consideration. It was error to adjudicate on appeal an issue which was not litigated before the Board. The ap-

plicant should have submitted a new application to the zoning authorities for a permit to erect the alleged hotel as contemplated by the substantial changes which he had decided upon. See Appeal of Miller, *1962, 407 Pa. 20, 179 A.2d 194*; River Forest State Bank and Trust Co. v. Zoning Board of Appeals of Maywood, *1961, 34 Ill.App.2d 412, 181 N.E.2d 1*. This rule applies even though the hearing on a zoning appeal is de novo under 30 M.R.S.A. § 4954(2A) and Rule 80B(a) and (c) of M.R.C.P.

Should the Court below however have sustained the Board regarding the applicant's original proposal? The intended use of the property at 960–970 Shore Road, in Cape Elizabeth, as conditionally approved by the Board, consisted in the erection and operation of a new "hotel" so-called of a residential type, where in the conduct of its business the applicant would bar transients and where regular maid and linen service would not be provided. We answer in the negative. The issue really comes down to whether or not the proposed use of the building as originally advanced by the applicant before the Board was a permissive use under the provisions of the zoning ordinance of the Town of Cape Elizabeth which authorized in a "Residence C" district the following buildings or uses * * * (2) *hotel* * * *, subject to the approval of the Board of Appeals.

Zoning laws, whether statutes or ordinances, in as much as they curtail and limit uses of real estate and are in derogation of the common law must be given a strict construction and the provisions thereof may not be extended by implication. Toulouse v. Board of Zoning Adjustment, *1952, 147 Me. 387, 87 A.2d 670*; Murphy Motor Sales, Inc. v. First National Bank of St. Johnsbury, *1960, 122 Vt. 121, 165 A.2d 341, 82 A.L.R.2d 985*. Nevertheless, they should be read according to the natural and most obvious import of the language when there is no manifest legislative intent contrariwise. Frost v. Lucey,

Me., July 1967, 231 A.2d 441; Pease v. Foulkes, 128 Me. 293, 298, 147 A. 212. Where the ordinance does not define the word "hotel," we must presume that the legislative body of the Town of Cape Elizabeth intended that the word should be construed according to its common acceptance. Dixon v. Robbins, 1927, 246 N.Y. 169, 158 N.E. 63, 53 A.L.R. 986; Kurz v. Board of Appeals of North Reading, 1960, 341 Mass. 110, 167 N.E.2d 627.

> "In the interpretation of a zoning ordinance, words in common use must be given their plain and natural meaning in the absence of any showing that in the enactment of such ordinance words and expressions contained therein were used in any other than their usual and ordinary sense. In other words, the language of the zoning ordinance must be construed according to its natural import in common and approved usage." 1 Yokley, Zoning Law and Practice (2d Ed.) § 184, p. 446.

■ Text-writers and lexicographers are in general agreement in their definition of the word hotel as a place held out to the public for the accommodation of travelers or transients. See 29 Am.Jur., Innkeepers, § 2; 43 C.J.S. Innkeepers § 1.

> Ballentine, Law Dictionary (2d ed.): "Hotel: a house of entertainment for *travelers;* a house where a traveler is furnished as a regular matter of business, with food and lodging while on his journey."

> Webster's New-International Dictionary (2d ed.): "Hotel: a house providing lodging and usually meals for the public, *especially for transients.*"

> Encyclopedia Americana (1963 ed.): "Hotel: in modern usage a hotel is an institution or building operated for profit that provides lodging, food, and service to the *transient traveling public* * * * To fall within the definition of a hotel the principal emphasis of the institu-

*tion's activity should be on the transient guest."* [All italics supplied.]

One of the distinctive features of a hotel as commonly understood is that it receives transient guests and furnishes them with lodging. Hubbell v. Higgins, 1910, 148 Iowa 36, 126 N.W. 914.

■ We are mindful, of course, that the term hotel in this day and age does not have reference to institutions or buildings operated exclusively for the traveling public, and that it may mean that type of hotel which primarily caters, not to transients, but to those who stay for a more or less indefinite time. Levesque v. Columbia Hotel, 1945, 141 Me. 393, 44 A.2d 728.

■ However, a zoning ordinance must be construed reasonably with regard both to the objects sought to be attained and to the general structure of the ordinance as a whole. In other words, all parts thereof must be taken into consideration to ascertain legislative intent. Petros v. Superintendent and Inspector of Buildings, 1940, 306 Mass. 368, 28 N.E.2d 233, 235, 128 A.L.R. 1210. See also, Cloutier v. Anctil, 155 Me. 300, 154 A.2d 175.

■ Although we have not before us in the evidence the complete zoning ordinance and thus are not provided the aid which a study of the complete zoning ordinance might permit in matter of interpretation, we know from the decision of the Board in Mr. Bruce's first application and through the opinion of the Justice below that there is no specific provision in the ordinance for what might be termed a high rise apartment building. The ordinance, Section 4, B(2), permits with the approval of the Board of Appeals, not only hotels, but garden apartment houses. It does not permit apartment houses generally, nor specifically apartment hotels, so-called. It defined a garden apartment house as a structure designed to consist of four or more dwelling units (by ordinance definition—a room or group of rooms forming a

**318**

habitable unit for one family with facilities used or intended to be used for living, sleeping, cooking and eating) laid out in such a manner that no one must ascend or descend more than 1½ stories from the level of the outside entrance in order to reach a room in his dwelling unit. Thus, the ordinance clearly indicates that any high rise apartment house, which does not qualify as a garden apartment house is not permissible under the ordinance. The applicant's original proposal, consisting of 36 dwelling units, is an apartment house in design and potential operation and could not be legally converted to a permissible use under the ordinance by the mere addition of some of the services incidental to the conduct of a hotel. If the so-called apartment hotel, residential hotel or family hotel had been intended by those who enacted the Cape Elizabeth zoning ordinance to be included in their use of the term "hotel," there would appear to be no reason why the high rise apartment house structure, itself similar in design and purpose as the so-called apartment hotel, would not have been provided for in the ordinance. The policy of proscribing high rise apartment houses in Cape Elizabeth should equally apply to the so-called apartment hotels.

▮▮ We do not wish to intimate however that the term "hotel" as used in the Cape Elizabeth zoning ordinance excludes such institutions which in the traditional concept of catering to transient guests, do also cater as stated in *Levesque*, supra, to those who stay for a more or less indefinite time, provided the persons occupying the hotel accommodations receive maid and linen service and have the benefit of the other incidental services that a hotel usually furnishes.

▮▮ Whether a proposed use falls within a given categorization contained in zoning regulations is a question of law, on which the zoning board's determination as well as that of the single Justice is subject to review. See Merry v. Zoning Board of Adjustment, 1962, 406 Pa. 393, 178 A.2d

595. The meaning of terms or expressions in zoning ordinances is a question of construction and one of law for the court. Langbein v. Board of Zoning Appeals of Town of Milford, 1949, 135 Conn. 575, 67 A.2d 5; Kurz v. Board of Appeals of North Reading, 1960, 341 Mass. 110, 167 N.E.2d 627; Missionaries of our Lady of La Salette v. Village of Whitefish Bay, 1954, 267 Wis. 609, 66 N.W.2d 627.

▮▮ The name by which a building or use is designated or called has some evidentiary value but is not of controlling importance in determining whether such a building or use is within one of the permitted institutions or types of operations under the zoning ordinance involved. It is rather the nature of the activities or the character of the business or service to be carried on which will settle the construction to be given to the legislative language. Langbein v. Board of Zoning Appeals of Town of Milford, supra; Merry v. Zoning Board of Adjustment, supra; Adler v. Northern Hotel Co., 1950, U.S.C.A., 7th Cir., 180 F.2d 742.

▮▮ We do recognize that in certain factual situations, even though the terms of the zoning ordinance are to be defined by the Court as a matter of law, whether or not the proposed structure or use meets the definition in the application thereof may be a matter of fact for initial Board determination. *Langbein*, supra; *Merry*, supra.

▮▮ In the instant case the original proposal consisting of 36 suites, with each suite forming a habitable unit for one family having facilities for living, sleeping, cooking and eating, limited as it was to tenants signing a lease for occupancy thereof for a minimum period of 30 days, and not providing for regular maid and linen service which is traditional in the operation of hotels, was not as a matter of law a use within the meaning of the word "hotel" as intended by the zoning ordinance of the Town of Cape Elizabeth.

Compliance with the requirements of 30 M.R.S.A. §§ 2751, 2753, 2703, 2803, 2901 and 2801, relating to license, bond, display of notices and maintaining a register, was not sufficient to give the proposal the true character of a hotel as contemplated by the ordinance.

The Board's construction of the zoning ordinance in its approval of the applicant's original proposal was an unlawful departure from the general scheme provided by the ordinance. We discern in the ordinance no implication of the authorization of the proposed apartment house building in the authorization of hotels.

The entry will be

Appeal sustained.

Judgment of the Superior Court set aside. Appeal from the decision of the Zoning Board of Appeals sustained. Decision of the Zoning Board of Appeals set aside. Remanded for entry of decree consistent herewith. So ordered.

WEBBER and TAPLEY, JJ., did not sit.