STATE OF MAINE                               SUPERIOR COURT
HANCOCK, ss.                                 CIVIL ACTION
                                             Docket No. AP-01-005
                                             EAC - HAN - 7/...

PATRICK JORDAN and
RHONDA JORDAN
        Plaintiffs

v.                                           ORDER ON 80B APPEAL

CITY OF ELLSWORTH                            DONALD L. GARBRECHT
        Defendant                            LAW LIBRARY

                                             SEP 18 2002

## FINDINGS OF FACTS AND PROCEDURAL HISTORY

Patrick and Rhonda Jordan own a 2-acre parcel of land located within the Commercial and Light Industrial District ("C-LI" zone) in Ellsworth, Maine. On October 18, 2001, the Jordans filed an application with the Ellsworth Planning Board, seeking approval of their plan to build Acadia Suite Hotel at the Park, a 12-unit hotel and a 72-seat restaurant on the parcel mentioned above. The proposed hotel was expected to cater to persons in search of lodging for longer than the "average" vacationer. Each unit would contain kitchen facilities, and maid and linen service would be provided on whatever schedule was requested by the guest. By providing these amenities without requiring any sort of lease or minimum stay, the proposed hotel would have offered an intermediate service between "daily" hotels and apartments.

On January 2, 2002, the first public hearing on the application was held. After considering and approving various waiver requests, and finding that the Jordans' application was complete, the Board discussed the proposed project. As reported in the minutes of that meeting, the Chairperson stated that the Board first had to

determine whether the proposed building was actually a hotel. During the ensuing discussion, the Board members questioned a number of things, including the lack of a reception desk, and the varying schedules for maid service. Based upon the answers provided, the Board voted that the proposed building "did not [meet] the definition of a hotel as described in [the] Ordinance." To ensure that their decision was clear, the Board included the following explanatory language in its formal decision:

1. There is not a clear break between it being long-term lodging and in fact actual residences because there is no cutoff on length of stay.

2. There are full dwelling units in this building.

Based upon those findings, the Board denied the Jordans' application.[1]

The Jordans filed a timely appeal from that decision to the Ellsworth Board of Zoning Appeals, alleging that the Board's decision had been based upon a misinterpretation of the ordinance. After a hearing on January 22, 2002, the BZA affirmed the Board's decision. As a part of its decision, the BZA reached the following conclusion:

Based on the above stated facts and the provisions of the ordinance cited, the Board concludes that The Ellsworth Planning Board was not in error in denying approval to Patrick Jordan for a (Major) Conditional Use Permit for Acadia Suite Hotel/Restaurant in the C-LI Zone which was not clarified to the Planning Board by the applicant that this was an actual hotel and not residence in full apartments.

---

[1]Although the Board specifically voted against taking administrative notice of earlier proceedings, the court must note that the focus of inquiry concerning this project may have been colored by a previous application filed by the Jordans. They had initially proposed to erect a small apartment building on the same site. That application was denied because apartment buildings are not permitted uses in the C-LI zone.

The Jordans filed this appeal with the Superior Court on February 12, 2002, pursuant to M.R.Civ.P. 80B. Both they and the City of Ellsworth filed briefs in support of their positions. Arguments were presented on July 3, 2002, and the following decision is based upon the court's review of the briefs, case law, the records, and the arguments of counsel.

## DISCUSSION

In their appeal, the Jordans argue that the Planning Board erred when it "considered factors and applied requirements that are contained nowhere in the Ordinance and when it denied the application based upon the perceived failure of the applicant to demonstrate a 'clear break between [the hotel] being long-term lodging and in fact actual residences'. . . ." The Jordans assert that the proposed project falls squarely within the definition of hotel contained in the ordinance.

In its response, Ellsworth relied in large part on *Moyer v. Board of Zoning Appeals*, 233 A.2d 311 (Me. 1967). That case involved similar circumstances over thirty years ago. In early 1966, William Bruce sought permission to replace some dilapidated hotel buildings in Cape Elizabeth with a large apartment building. His application was denied by the Town's Planning Board on April 22, 1966 because the Town's zoning ordinance did not permit apartment buildings. Bruce did not appeal that decision.

In August 1966 Bruce "applied anew for a building permit, but on this occasion he sought permission to construct a hotel." *Moyer*, at 313. After the building inspector denied this second application, Bruce appealed to the Board of

Zoning Appeals for the town of Cape Elizabeth. There he explained that he proposed to build a hotel containing suites with kitchenettes that would attract a variety of customers including: "older couples, widows and widowers who might make this building their principal residence, . . . couples waiting for a home to be built, businessmen on temporary assignment and other persons in a comparable transient status."[2] *Moyer*, at 313. Mr. Bruce also intended to have his occupants sign thirty-day leases. The BZA granted Bruce's application, but placed certain restrictions on the project in an attempt to maintain the residential aspect of the area.

Some Cape Elizabeth residents who owned property in the immediate vicinity appealed the BZA's decision to the Superior Court. In that venue, Bruce made multiple changes to his proposal, including the deletion of the 30-day lease requirement. Over the appellants' objection, the Superior Court found that the changes had not substantially altered the original proposal presented to the BZA, and thereafter affirmed the BZA's decision.

The Law Court, however, disagreed with the Superior Court, and set aside both the court's decision and the decision of the BZA. In vacating the Superior Court's decision, the Law Court placed great emphasis on the BZA's expressed hope that the hotel would attract customers who would exhibit "consideration for the community" and that the hotel would have a "residential aspect." The Court

---

[2] It is not entirely clear from the syntax whether the Court intended to include older couples, widows and widowers as members of the "transient" public.

explained that the use of such language by the BZA demonstrated the Board's intention that:

> [T]his hotel would not cater to transients of diversified allegiances but would only accept permanent guests whose minimum sojourn of 30 days in the community would be consistent with the Board's obvious policy to maintain in the residential district such as this site is located in, community spirit, understanding and consideration.

*Moyer*, at 314. Based upon the removal of the residency requirement, the Law Court vacated the Superior Court's affirmance of the BZA's decision. Rather than remand the case to that court, however, the Law Court reviewed the decision of the BZA directly.

The Cape Elizabeth Zoning Ordinance did not include a definition of "hotel," so the Law Court turned to a number of lexicons to obtain a definition, and then focussed its attention on the use of the word "transient" in all of the definitions found. With the 30-day residency requirement back in place, the Court found that the hotel's guests would no longer be "transients." Based upon this review, the Law Court held that the BZA erred in granting the application because the "hotel" proposed by Bruce did not fit within the "natural and obvious import" of the word "hotel."

The Court did acknowledge that some hotels might primarily cater "not to transients, but to those who stay for a more or less definite time," and found that such accommodations would still fit within the general definition of "hotel," as long as the guests "receive[d] maid and linen service and [had] the benefit of the other incidental services that a hotel usually furnishes." *Moyer*, at 318. Bruce's plan

to eliminate maid and linen service, when combined with the 30-day residency requirement, was fatal to the proposal.

The dispute presented in this case, although based upon similar facts, has some significant differences. In *Moyer*, the zone under discussion was residential. Here, the zone is commercial/light industrial, and there has been no suggestion that a commercial enterprise will somehow change the character of the neighborhood. In fact, quite the opposite may be true. As mentioned earlier, apartment buildings are not currently permitted on this site. The Planning Board denied the Jordan's application because it was concerned about the possibility that these units would function more as apartments than hotel rooms.

Second, Ellsworth's ordinance already defines "hotel," as "[a] building or group of buildings having ten (10) or more guest rooms in which lodging, or meals and lodging, are offered for compensation, including motels, tourist courts, motor lodges, and cabins." The court must look to that definition, rather than to any contained in various dictionaries, in reviewing the Board's decision for an error of law or an abuse of discretion. The *Moyer* decision, with its prescient discussion of the different types of hotels, had been in place for over thirty years at the time the City of Ellsworth adopted its Ordinance, including the quoted definition of "hotel." If the City intended to specifically include in the definition of "hotel" the type of hybrid proposed by the Jordans, it could have done so.

Finally, although the proposed project here does include maid service, it is not "regular maid service." While this particular issue may seem trivial, "regular linen and maid service" was of particular importance to the Law Court in *Moyer*.

According to Article X, Section 10 of the Land Use Ordinance for the Town of Ellsworth:

> The Commercial and Light Industrial District is established to provide land for a mix of commercial and light industrial uses in areas in close proximity to municipal services and in favorable locations with respect to transportation corridors.

The same section explains that uses permitted in the Commercial Zone may also be permitted within the C-LI district. Pursuant to that language and to Article X, Section 6(C)(9), hotels may be permitted in the C-LI zone by the Planning Board "provided that the requirements of Article XII have been met." Article XII, Section 1 of the Ellsworth Ordinance requires that all proposed conditional uses be subjected to plan review by either the Planning Board or the CEO with the following goals:

> A. Provide a level of municipal review, that would not otherwise occur, of projects that could impact the community.
>
> B. Prevent undue adverse impact by such uses upon: (1) the existing natural and man-made environment; (2) existing or expected municipal needs, facilities, and services; and (3) neighboring affected persons and properties.
>
> C. Sustain the comfort, health, tranquility and contentment of residents, and thus, to promote and protect the health, welfare and safety of the City.

Erecting an "hotel" that operates more like an apartment building in a commercial zone might well place an unexpected and unwanted burden on municipal facilities and services.

In denying the Jordan's application because it found that the project more closely resembled an apartment building than a hotel, the Board did not abuse its discretion or commit an error of law in. Although the Jordans have called the project a hotel, this court cannot say that the Board was in error for failing to accept that nomenclature:

> The name by which a building or use is designated or called has some evidentiary value but is not of controlling importance in determining whether such a building or use is within one of the permitted institutions or types of operations under the zoning ordinance involved. It is rather the *nature of the activities* or the character of the business or service to be carried on which will settle the construction to be given to the legislative language.

*Moyer*, p. 318 (emphasis added).

Based upon the record presented, and upon the findings and conclusions above, the court finds that there is competent evidence in the record to support the Board's decision that the proposed hotel did not fit within the definition contained in the Ordinance.

## ORDER

Plaintiffs' appeal denied. Decision of the Ellsworth Planning Board affirmed.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: July 24, 2002

Ellen A. Gorman
Justice, Maine Superior Court

**FILED &
ENTERED**

JUL 2 4 2002

**SUPERIOR COURT
HANCOCK COUNTY**

8