STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-44

SABLEGOLF, LLC, AND
SABLOTS, LLC,

                    Petitioners

          v.

THE INHABITANTS OF THE
CITY OF SOUTH PORTLAND,
MAINE, and

THE PLANNING BOARD OF
SAID CITY,

                    Respondent
and

PINNACLE PARTNERS OF
SABLE OAKS, LLC

          Party-In-Interest

DECISION AND ORDER

SEP 24 2004

This matter is before the court on the appeal of the petitioners, Sablegolf, LLC and Sablots, LLC (together, "Sable") from the decision of the Planning Board of the City of South Portland ("Board") to grant site plan and amended subdivision approval to the party-in-interest, Pinnacle Partners of Sable Oaks, LLC ("Pinnacle").

BACKGROUND

Pinnacle owns a parcel of land in the Sable Oaks development known as 1515 Sable Oaks Drive ("Lot 1515"). (R. Tab 37, Ex. 4.) The land is located within South Portland's Professional Office ("PO") zoning district. (R. Tab 19(b).) On October 15, 2002, Pinnacle filed an

application with the Board seeking site plan approval for the development of a large office building and associated parking on its property. (R. Tab 37.) The proposed project consists of a three to four story building and a field of on-grade parking providing 509 spaces for vehicles. (R. Tab 19(d).)

Pinnacle's parcel is surrounded by land owned by Sable, much of which is occupied by the Sable Oaks Golf Course. (R. Tab 37, Ex. 24.) Pinnacle's site plan calls for improvements on land located adjacent to the fairways and greens that form part of two holes of the golf course. (Sable's Br. at 3.) Sable alleges that the orientation of the project may pose significant hazards to persons and property due to the risk of errant golf balls entering the Pinnacle development. (Sable's Br. at 3 citing R. Tab 10 at 17-18; R. Tab 18 at 12; R. Tab 19, Ex. B, Ex. C and Ex. D.)

In addition to its application for site plan approval, Pinnacle submitted to the Board a request for approval of an amendment to the subdivision plan that originally created Lot 1515. (R. Tab 37; R. Tab 25.) The amendment was necessary because Pinnacle's proposal involves the relocation of a fifty-foot easement enjoyed by Sable across Pinnacle's parcel that Sable has been using for the purpose of accessing a golf course maintenance building. (R. Tab 37, Ex. 6.) In the deed description of Lot 1515, Sable's easement is expressly made subject to Pinnacle's right to "reasonably relocate said easement facilities at its expense provided that such relocation shall be carried out so as to avoid disruption to the beneficial use and enjoyment of the easement." (R. Tab 37, Ex. 5.) Given that the easement was depicted on the existing

2

subdivision plan as being in a location different from where it would be located under Pinnacle's proposal, Pinnacle was technically required to obtain an amendment to the original subdivision plan so that it would show the relocated easement in the proper location. (Pinnacle's Br. at 5.)

On June 10, 2003, the Board conducted a public hearing on both of Pinnacle's applications. (R. Tab 10.) Following several hours of discussion, the Board voted to approve Pinnacle's applications for site plan and amended subdivision approval by a vote of 4-1, subject to seven express conditions. (R. Tab 10 at 49-53.)[1] After voting to approve the site plan and subdivision applications, the Board adopted its Findings of Fact and Decision. (R. Tab 3.)

## DISCUSSION

In an 80B appellate proceeding, a decision of a Board is reviewed for "error of law, abuse of discretion, or findings of fact not supported by substantial evidence in the record." *Yates v. Town of Southwest Harbor,*

---

[1] The conditions are as follows:
1. Planning Board Regulation #5, standard condition of approval.
2. The applicant shall provide correspondence to the City of Portland on any future traffic studies performed at the intersection of Sable Oaks Drive and Running Hill Road and Sable Oaks Drive and Cummings Road.
3. The approval shall incorporate Conditions found in both the MDOT traffic permit and the MDEP Site Location permit.
4. The applicant shall maintain in perpetuity a maintenance contract(s) for the proprietary stormwater treatment units, evidence shall be submitted to the Planning Department upon request.
5. Prior to building permits, the applicant shall submit updated financial commitment information.
6. Prior to building permits, the applicant shall submit details on the proposed gated access system to be installed at the intersection of Country Club Drive and Sable Oaks Drive.
7. Prior to the issuance of building permits the applicant shall submit revised rear setbacks.

(R. Tab 3 at 6.)

2001 ME 2, ¶ 10, 763 A.2d 1168, 1171 (citation and internal quotation omitted). This Court may not substitute its judgment for that of the Board. *Brooks v. Cumberland Farms*, 1997 ME 203, ¶ 12, 703 A.2d 844, 848.

Interpretation of an ordinance is a question of law that the court reviews *de novo*. *Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285, 1287 (citations omitted). In construing the language of a zoning ordinance, the court takes into consideration "both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Id.* (citations and internal quotations omitted).

In the present action, the petitioners make several arguments in favor of reversal or remand of the Board's decision. First, they argue that the Board committed a legal error by erroneously determining that it did not have authority to require Pinnacle to mitigate safety hazards by increasing buffers. Second, petitioners assert that the Board committed a legal error by failing to require Pinnacle to submit required evidence demonstrating financial capacity to complete the project. Finally, the petitioners claim that the Board acted arbitrarily and capriciously by determining that Pinnacle satisfied applicable site plan review criteria despite the lack of substantial evidence in the record. Each of these arguments will be discussed in turn.

1. Authority To Impose Conditions

Petitioners assert that the layout of Pinnacle's proposed development results in an obvious risk of personal injury and property damage posed by errant golf balls, that the Board recognized this risk,

4

and that the Board improperly interpreted the Code as prohibiting it from imposing additional buffering requirements on Pinnacle's Project. They argue that the Board's misunderstanding regarding its own authority and its failure to act constituted an error of law.

Chapter 27 of South Portland's Code of Ordinances ("Code") authorizes the Board to impose additional conditions on proposed developments when it determines that such conditions are necessary for the mitigation of safety hazards. *See* R. Tab 39 at 27058 (allowing the planning board to increase the parking or landscaping requirements of a proposed development where the planning board finds that the proposed development is likely to need additional parking spaces and landscaping); R. Tab 39 at 27059 (allowing the Board to impose reasonable conditions of approval related to the standards of approval including requirements for buffering, screening or landscaping in addition to the minimum standards set forth in the ordinance). The imposition of such additional conditions on proposed projects is not mandatory and is left to the discretion of the Board.

Here, the Board correctly interpreted its ordinance and understood its authority to impose additional conditions relating to the mitigation of safety hazards. *See e.g.* R. Tab 10 at 46-49 (evidencing the Board's understanding of its authority to impose such conditions via its consideration of a motion to require Pinnacle to provide written notice of the potential risks of errant golf balls to its tenants); R. Tab 3 at 6 (evidencing the Board's general understanding of its ability to impose conditions on proposed developments). However, the Board made a

conscious decision not to impose additional conditions on Pinnacle's proposed project. Therefore, the court finds no error of law with respect to this matter.

In addition, the Board's factual finding that Pinnacle satisfied the Code's buffering requirement is supported by competent evidence in the record. The Code requires that that the proposed buffering "provide adequate protection to the use, enjoyment and value of neighboring properties." R. Tab 39 at 27059. The record shows that Pinnacle has proposed planting more than one thousand trees, shrubs, and flowers around its property. *See* R. Tab 3 at 3. The record also shows that Pinnacle has agreed to plant fifty-eight pine trees to buffer its border with the golf course. *See* R. Tab 10 at 7. While Sable may disagree with the Board's determination regarding whether the proposed buffering is adequate to meet the Ordinance, the court finds that the Board properly interpreted the Code and that the Board's conclusion "is not unsupported by substantial evidence merely because two inconsistent conclusions can be drawn from the evidence." *Veilleux v. City of Augusta,* 684 A.2d 413, 415 (Me. 1996) (citation omitted).

## 2. Financial Capacity

### a. Compliance with the Ordinance

The petitioners argue that the Board abused its discretion and committed legal error by failing to comply with sections 27-146(t) and 27-144(g) of the Code and allowing the approval of Pinnacle's permit without sufficient or reasonable evidence of Pinnacle's financial capacity to

complete the project. Upon a *de novo* review of the ordinance, *see Isis*, 2003 ME 149, ¶ 3, 836 A.2d at 1287, the court agrees.

Section 27-146(t) of the Code requires that before granting approval of a project, the planning board make a determination that applicant "has financial resources sufficient to compete the proposed development." *See* R. Tab 39 at 27059. Similarly, section 27-144(g) of the Code provides that "each application for a site plan permit shall consist of the following . . . reasonable evidence of the applicant's technical and financial capability to complete the proposed development." *See* R. Tab 39 at 27055.

Because the terms "reasonable" and "sufficient" are not specifically defined, the Code instructs that they be given their customary meanings. *See* R. Tab 39 at 27017; *see also Fitanides v. City of Saco*, 2004 ME 32, ¶ 17 843 A.2d 8, 14. The customary meaning of "reasonable" and "sufficient" in this portion of the Code can be gleaned from the City's Site Plan Application Form, which the ordinance explicitly requires project applicants to complete before Board review of their projects. *See* R. Tab 39 at 27054-a; *see also Isis*, 2003 ME 149, ¶ 3, 836 A.2d at 1287 (holding that the terms in an ordinance should be construed reasonably with regard to both the objectives sought to be obtained and to the general structure of the ordinance as a whole); *George D. Ballard, Builder, Inc. v. City of Westbrook*, 502 A.2d 476, 480 (Me. 1985); *Robinson v. Bd. of Appeals, Town of Kennebunk*, 356 A.2d 196, 198 (Me. 1976); *Moyer v. Bd. of Zoning Appeals*, 233 A.2d 311, 317 (Me. 1967).

Page five of the Site Plan Application Form lists six acceptable types of evidence of financial capability,[2] requires the applicant to submit one or more of these pieces of evidence, and instructs the applicant to place a check next to the line beside the type of evidence that has been submitted. *See* R. Tab 37 at 5. Page two of the Site Plan Application Form indicates that an application is not complete unless the applicant submits one or more of these six forms of evidence as "Exhibit 8." *See* Tab 37 at 2.

In the present case, Pinnacle submitted its Site Plan Application Form on October 15, 2002. *See* R. Tab 37 at 1. In its application, Pinnacle did not place a check mark next to any of the six types of evidence listed on

---

[2] Acceptable types of evidence of financial capability include:
   1. A written statement from the applicant's bank or a certified public accountant who recently has audited the applicant's finances stating that the applicant has cash reserves in the amount of the estimated cost of the project and can devote those reserves to the project.
   2. When the applicant will personally finance the development, provide copies of bank statements or other evidence, which will indicate availability of funds, and evidence that the applicant can devote these funds to the project.
   3. The most recent corporate annual report indicating availability of sufficient funds to finance the development, together with a statement from the applicant that the funds are available and will be used for the proposed project.
   4. Copies of contracts, which will provide the source of funding for the operation and maintenance of the development when completed.
   5. A letter from a financial institution, governmental agency, or other funding agency, which indicates a timely commitment to provide a specified amount of funds and the uses for which the funds may be utilized.
   6. In cases where outside funding is required, but there can be no commitment of money until regulatory approvals are received, a formal letter of "intent to fund upon approval" from the appropriate funding institution indicating the amount of funds it is prepared to provide and their specified uses and conditions on which funds may be made available.

R. Tab 37 at 5.

the application form. Rather, with its application, Pinnacle submitted a letter from Pinnacle's Vice President of Development stating:

> Pinnacle Park at Sable Oaks, LLC will be pursuing private financing for the proposed project once approvals are in place and a sufficient amount of building space is pre-leased to credit tenants. We will be using these lease(s) as well as our financial statements and corporate capabilities to secure construction and permanent financing from local lending institutions and private investors. Because of the type of financing being pursued, this building will not be built on speculation, but only on a sufficient amount of space being pre-leased as our financial partners deem necessary.
>
> We would be happy to provide the City with copies of our financial commitments once they are received.

*See id.* at Ex. 8.

On February 18, 2003, following the submission of its original application, and before review of its application by the Board, Pinnacle submitted additional information to the South Portland Planning Department regarding its application, including a letter from Richard Blake, the Senior Vice President of Peoples Bank. This letter provides, in pertinent part:

> The principals of Pinnacle Park at Sable Oaks, LLC have requested Banknorth review their proposed 118,000 square foot office building project to be constructed at 1515 Sable Oaks Drive in South Portland, ME. The bank currently holds the first mortgage on the property and based on the attached construction cost estimate and other information received to date, the project appears to be economically feasible and the principals appear to have the expertise necessary to complete the project. At the appropriate time, the Bank will consider an application from Pinnacle Park at Sable Oaks, LLC in the amount of approximately 10 million dollars. However, this letter is merely a statement of interest and is not a commitment to fund.

*See* R. Tab 31, Ex. G.

On June 10, 2003, based on Pinnacle's submissions, the Board determined that Pinnacle had shown sufficient evidence of financial capability to complete the project and conditioned the approval of the proposed development on updated financial commitment information. *See* R. Tab 3 at 6, condition #5.

The Board abused its discretion and committed error with respect to section 27-144 by reviewing Pinnacle's application when Pinnacle had failed to provide reasonable evidence of its financial capacity to complete the project as inferentially defined by the Site Plan Application Form. *See* Tab 39 at 27054-a & 27055; R. Tab 37 at 5. Of the six acceptable types of documentation listed on the form, it is certain that Pinnacle's submissions do not meet the standards of any of the first five. *See* R. Tab 37 at 5. At best, Pinnacle could argue that the submissions come in under the sixth type of acceptable forms of evidence. However, for the following reasons, the court determines that such a finding by the Board would constitute an abuse of discretion.

First, although the letter from Peoples Bank is a letter from an appropriate funding institution, it is not a letter of "intent to fund upon approval." Rather, it explicitly states that it is a "statement of interest." *See* R. Tab 31, Ex. G. Second, the letter does not indicate that the bank will provide funding once regulatory approvals are received. Rather, it states, "At the appropriate time, the Bank will consider an application from Pinnacle Park at Sable Oaks, LLC in the amount of approximately 10 million dollars." *See id.* Finally, the letter does not indicate the conditions on which the funds may be made available. *See id.*

10

Similarly, the letter from Pinnacle's Vice President of Development fails to meet the appropriate requirements. First, it is not a letter from an appropriate funding institution. Second, although it states that private funding will be pursued for the proposed project "once approvals are in place and a sufficient amount of building space is pre-leased to credit tenants," it does not indicate that any institution intends to fund the project once regulatory approvals are in place. *See R. Tab 37* at Ex. 8. Accordingly, this letter cannot be said to evidence Pinnacle's financial capability to complete the project, nor does it sufficiently supplement the letter from Mr. Blake at Peoples bank to evidence Pinnacle's financial capability of completing the project.

Just as the Board erred by determining the submissions reasonable under section 27-144(g), it erred by deeming these submissions sufficient for the purposes of approval. Submissions that are unreasonable cannot be said to be sufficient. Nor does the Board's act of conditioning the approval on the applicant's submission of updated financial commitment information prior to building permits, *see* R. Tab 3 at 6, ameliorate its original erroneous act of reviewing an incomplete application.

Accordingly, the Board's decision must be vacated and remanded for this reason.

### 3. Record Support for Board's Decision

The petitioners assert that the Board acted arbitrarily and capriciously in making its determination on a variety of site plan criteria. Specifically, they take issue with the lack of record support for the

11

Board's decisions involving: (a) Pinnacle's financial capacity; (b) the proposed development's adverse impact on scenic and natural beauty; (c) the proposed development's impact on traffic flows; and (d) the proposed development's impact on water quality.

### b. Pinnacle's Financial Capacity

In light of the court's threshold determination that the Board erroneously determined that Pinnacle's submissions were reasonable evidence of its financial capability under the ordinance, the court need not reach the issue of whether there is substantial evidence in the record to support the Board's finding on financial capability.

### c. Adverse Impacts on Scenic and Natural Beauty of the Area

The petitioners claim that there is inadequate support in the record for the Board's conclusion that Pinnacle's proposed development complies with section 27-146(m) of the Code, which provides, in pertinent part: "[t]he proposed development will not have an adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites, or rare irreplaceable natural areas . . ." The petitioners also contend that the Board's finding that Pinnacle complied with section 27-135 of the Code is unsupported by the record. That section provides that the purpose of the PO District is as follows:

> To create, preserve and enhance an environment for, and conducive to, the development and protection of modern, large-scale conference, research and administrative facilities and institutions of a non-nuisance type in attractive surroundings as well as certain carefully controlled combined residential and recreational uses. This district is typically appropriate to large acreages and is intended to provide for an aesthetically attractive working environment with park or

12

campus-like grounds, attractive buildings, ample employee parking, and other amenities appropriate to an employee-oriented activity. . . It is intended that the development will be of the type such that each is a credit to the other and in which investment in well-designated and maintained plants is secured by the maintenance of the highest standards throughout the district. The uses permitted by this district shall be limited to those possessing the ability to comply with the standards of operation, performance and environment defined by the district and shall be compatible with the natural surroundings in which they are located . . . landscaped open space and screening are required.

R. Tab 39 at 27050.

The court disagrees with the petitioners and finds that the record contains substantial evidence that the Pinnacle development meets the requirements set forth in both section of the Code. *See* R. Tab 3 at 3-4 (evidencing Pinnacle's extensive landscaping plan and noting how Pinnacle's landscaping plan would minimize soil and tree removal, retain existing vegetation, and keep grade changes consistent with those in the neighboring areas. *See e.g.* R. Tab 5 (containing photo depictions evidencing an aesthetically working environment with park or campus-like grounds and an attractive building); R. Tab 10 at 7 (evidencing that Pinnacle's proposal provides ample parking by providing 150% more parking spaces than required by ordinance; meets the open space requirement by designating 47% of its land as open space; and meets the building height requirement by proposing a building that is 60% of what is allowed); R. Tab 19, Ex. G (depicting Pinnacle's landscape plan).

The petitioners' assertions that "Pinnacle's proposed development is incompatible with the natural surroundings of the golf course," that

the proposed parking area too large and visually unpleasing, and that a visual impact study should have been done are not enough to constitute arbitrary or capricious action by the Board. Compatibility with a man-made golf course is not required by the Code. Nor does the Code prescribe a maximum number of parking spaces, or require such a visual impact study. Again, the applicable test here is whether the record supports the Board's decision, and the court finds that the Board has passed this test.

### d. Public Road Congestion or Unsafe Conditions

The petitioners assert that there is insufficient evidence in the record to support the Board's conclusion that the Pinnacle development will not cause unreasonable public road congestion or unsafe conditions.

The Code provides, in relevant part, that the Board must find that:

> [t]he proposed development will not cause unreasonable public road congestion or unsafe conditions with respect to the use of the proposed public or private ways which will serve users of the development. The board shall review the location, number, and control the access points, adequacy of adjacent streets, traffic flow, sight distances, turning lanes, and existing or proposed traffic signalization, and pedestrian-vehicular contacts.

R. Tab 39 at 27058, req. g.

The petitioners argue that rather than complying with the Code, the Board improperly abdicated its authority to review Pinnacle's plans and relied almost exclusively on the fact that Pinnacle had received a Traffic Movement Permit from the Maine Department of Transportation ("MDOT"). They also argue that Pinnacle does not have title, right or

14

interest in the land necessary for it to implement its access plan, nor has it gotten consent from the landowner to implement its access plan. In addition, petitioners contend that Pinnacle has not provided any details regarding its pass-card system, and that placing a condition on Pinnacle's approval that it provide more details does little to establish that the development will not cause unreasonable road congestion or unsafe conditions.

The petitioners' assertion that the Board did not conduct its own review of this matter is unfounded. Pinnacle submitted its traffic study to both the Board and the DOT, and the record shows that the Board undertook its own review of the traffic study as required by the Code. *See* R. Tab 3 at 1-2; R. Tab 10 at 2-3. The court finds that the information provided to the Board in the traffic study, *see* R. Tab 36, Ex. 13, as well as the Board's knowledge of the conditions imposed by the MDOT when granting Pinnacle its permit, *see* R. Tab 31, Ex. A, constitutes substantial evidence in the record to support the Board's conclusion that the project will impose no unreasonable public road congestion or unsafe conditions. There is also substantial evidence in the record to support the conclusion that the gated access system proposed by Pinnacle will not change the above analysis. *See* R. Tab 10 at 8-9. Similarly, there is substantial evidence in the record to support the conclusion that the project will impose no unreasonable public road congestions or unsafe conditions if Pinnacle does not obtain title or rights to the land it currently is proposing to use and ends up placing the gated access system in a different location. *See id.*

15

In addition to there being substantial evidence in the record to support the Board's determination on public road congestion and safety conditions, the court also notes the Board has conditioned approval on Pinnacle providing correspondence to the City of South Portland on any future traffic studies performed at the intersections of Sable Oaks Drive and Running Hill Road and Sable Oaks Drive and Cummings Road, the incorporation of conditions found in the MDOT traffic permit, and the submission of details related to the gated access system provides an additional safeguard against unreasonable public road congestion or unsafe conditions. *See* R. Tab 3 at 6, conditions 2, 3 and 6.

e. Water Pollution

The petitioners claim that the Board's decision that Pinnacle's proposed development will not result in impacts to water quality is erroneous, arbitrary and not supported by the record. *See* Sable's Br. at 20. Section 27-146(b) of the Code requires Pinnacle to demonstrate that its proposed development "will not result in *undue water pollution*." *See* R. Tab 39 at 27057 (emphasis added). The actual standard regarding a projects impact on water pollution is far less stringent than the standard that the petitioners set forth and rely on to support the arguments in their brief.

The record contains substantial evidence to support the Board's decision that the standard in the Code has been met. First, the Board conditioned its approval of the Pinnacle project on Pinnacle's agreeing to keep maintenance contracts on the storm water treatment units "in

16

perpetuity," *see* R. Tab 3 at 6, thereby preserving the water quality of a detention pond to which Sable has an easement. Although Sable argues that the water quality in the detention pond will be negatively impacted by the project, the Ordinance merely requires that the project not cause undue water pollution. The Board's finding that the detention pond will not be unduly polluted us supported by evidence in the record indicating that the storm water system is designed to meet or exceed the Department of Environmental Protection's standards for water purification by removing 81% of the total suspended solids in the water, as well as by evidence that 81% is a "fairly high standard." *See* R. Tab 10 at 3.

In addition, the Board's decision that water will not be unduly polluted is supported by Pinnacle's commitment not to use de-icing materials such as salt, on its parking lots, as well as its proposal to use environmentally friendly chemicals on the walkways. *See* R. Tab 10 at 12. The Board's decision is also supported by evidence that the proposed development's storm water system, in addition to the two treatment units, includes initial catch basins with material specifically designed to absorb petroleum and other fluids commonly released by motor vehicles. *See* R. Tab 10 at 24. Finally, the Board's decision is supported by evidence from soil pit tests that show that there is an impermeable clay layer underneath the storm water system that would prevent storm water from infiltrating the groundwater system. *See* R. Tab 10 at 25.

## DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

> The decision of the Planning Board of the City of South Portland is VACATED and the matter is remanded for further proceedings consistent with this Decision and Order.

Dated: June 9, 2004

_____
Justice, Superior Court

18

Date Filed __07-09-03__  _____Cumberland_____  Docket No.'____AP-03-44____
                                County

Action ____80B Appeal____

SABLEGOLF, LLC                          THE INHABITANTS OF THE CITY OF SOUTH PORTLAND
SABLOTS, LLC                            MAINE
                                        THE PLANNING BOARD OF SAID CITY
                                        PINNACLE PARTNERS OF SABLE OAKS, LLC, (Party-in
                                                                        Interest

                                   vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Philip F.W. Ahrens, III, Esq. | John C. Bannon, Esq. (Atty for PII) |
| Helen L. Edmonds, Esq. | Murray, Plumb & Murray |
| Pierce Atwood | 75 Pearl Street |
| One Monument Square | P.O. Box 9785 |
| Portland, ME  04101 | Portland, ME  04104-5085/ph: (207)773-5 |
| (207) 791-1100 | |
| | MARY  KAHL,  ESQ  767-7605 (City of S. |
| | PO Box 9422, South Portland, ME 04116 |

| Date of Entry | |
|---|---|
| 2003 | |
| July 9 | Received 07-09-03. |
| " | Summary Sheet filed. |
| " | 80B Appeal filed. |
| July 11 | On 7-11-03.<br>Briefing schedule mailed. Plaintiff's brief due 8-18-03. |
| July 16 | Received 7-16-03. |
| " | Answer of Party-in-Interest Pinnacle Partners of Sable Oaks, LLC to Plaintiff's Complaint for Review of Governmental Action filed. |
| July 21 | Received 07-18-03. |
| " | Acknowledgment of Service of Process and Waiver of Objections, Upon Pinnacle Partners of Sable Oaks to John C. Bannon, Esq. |
| July 25 | Received 7-25-03:<br>Notice of Appearance on behalf of Inhabitants of City of South Portland And Plainning Board of Said City by Mary Kahl, Esquire, filed. |
| July 31 | Received 07-31-03.<br>Acknowledgement of Service of Process and Waiver of Objections upon City of South Portland and the Planning Board of said City to Mary K. Kahl, Esq. filed. |
| August 18 | Received 08-18-03. |
| " | Plaintiffs Salbelgolf, LLc and Sablots, LLC's Initial Rule 80B Brief filed |
| " | Record filed:  Volume I of IV, Index Nos. 1-18; Volume II of IV, Index No. 19; Volume II of IV, Index Nos. 20-23; Volume IV of IV, Index Nos. 34-40. |