STATE OF MAINE
ANDROSCOGGIN, ss.

RECEIVED & FILED

DEC 1 1 2003

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-03-124
É Ac - A ... - ... ...

MICHAEL J. BOUCHARD
and
SUSAN BOUCHARD,
Plaintiffs

v.

CITY OF LEWISTON,
Defendant

CORRECTED ORDER



## PROCEDURAL HISTORY AND BACKGROUND

On May 15, 2002, the City of Lewiston received an undated letter from Susan and Mark Bouchard, complaining that its use of calcium chloride to clear the Old Greene Road of snow and salt had contaminated their well. On June 27, 2002, Richard Metivier, the City's Finance Director, wrote to the Bouchards and told them that the City was denying their claim for damages.

On April 28, 2003, the Bouchards wrote a second letter, this time directing it to Mr. Metivier's attention. In this second letter, the Bouchards reiterated their claim, and included "lab results from last year and this year." By letter dated May 7, 2003, Mr. Metivier again denied their claim.

On June 26, 2003, the Bouchards filed a four-count complaint against the City of Lewiston in the Superior Court for Androscoggin County. In their complaint, the Bouchards claimed that the City's use of calcium chloride and other salts during road maintenance activities caused unacceptably high levels of chloride and sodium in their well. Count I asserted a cause of action under 23 M.R.S.A. § 3659(1) and 14 M.R.S.A. § 8107. Counts II, III, and IV asserted claims of nuisance, trespass, and negligence, respectively, and alleged that the City's actions fell within one of the exceptions listed in

14 M.R.S.A. § 8104-A. They also asserted that the City had liability insurance to cover their claims, pursuant to 14 M.R.S.A. § 8116.

The City filed a motion to dismiss the Bouchard's claims on August 15, 2003. The Bouchards opposed that motion on September 19, 2003, and on the same date, filed a motion to amend their complaint to add a claim of unconstitutional taking, and filed a motion to strike the attachments defendant had filed with its motion to dismiss. Defendant replied to those filings on October 10, 2003. Counsel argued the motion to dismiss and the motion to strike on November 19, 2003. The plaintiffs' motion to amend their complaint was not addressed, as the City had requested that that motion be held until its motion had been acted upon.

## DISCUSSION

A. Motion to Dismiss and the Motion to Strike

A motion to dismiss under Rule 12(b)(6) asserts that a complaint fails "to state a claim upon which relief can be granted." In filing such a motion, the moving party accepts as true the facts as alleged in the complaint and the reasonable inferences that can be drawn from those facts, and construes those facts and inferences most favorably to the plaintiff. *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066. A motion to dismiss asserts that, despite the best possible interpretation of facts, the allegations in the complaint are insufficient to entitle plaintiff to relief as a matter of law. In litigation of a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court," Rule 12(c) requires that the "motion shall be treated as one for summary judgment." Then, full summary judgment process must be afforded to the parties: "All parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See* Rule 12(c). *See also Beaucage v. City of Rockland*, 2000 ME 184, ¶ 5, 760 A.2d 1054, 1056.

However, not all matters outside the pleadings will change a 12(b)(6) motion to a Rule 56 motion. Exhibits to a complaint, and, in limited cases, other facts and documents as to which there is no controversy as to authenticity, may be considered in the context of a 12(b)(6) motion. In this case, there is no dispute or controversy concerning the letters sent by the plaintiffs, or the letters sent in response by the City. Therefore, the court will consider those documents, which were attached to the City's motion.

However, within the confines of the pending motion, the court will not consider the insurance policy attached to the defendant's motion to dismiss. Rule 12 practice is based upon an assumption that the facts asserted by the plaintiffs in their complaint are true; the plaintiffs have asserted that the City has an insurance policy to cover this claim. Whether the City has such a policy is, at best, a combined question of fact and law. The court will not, on this record, decide whether the City has insurance to cover the plaintiffs' claim.

1. Count I

In their first count, the Bouchards made a claim under 23 M.R.S.A. § 3659, which states:

> In the event a land owner believes that a private water supply on his land has been destroyed or rendered unfit for human consumption by a political subdivision constructing, reconstructing or maintaining a public highway under its jurisdiction, the owner may apply in writing to the political subdivision for a determination of the alleged cause and assessment of damages.

The City has agreed that this provision creates an independent statutory cause of action unaffected by the immunities created by the Maine Tort Claims Act. *Clockedile v. Dep't of Transp.*, 437 A.2d 187, 189-190 (Me. 1981). However, it has asserted that sanding and salting roadways to remove snow and ice do not fall within the definition of

3

"maintaining a public highway." In support of that position, it cited *Goodine v. Maine,* 468 A.2d 1002 (Me. 1983), and 23 M.R.S.A. § 751 as standing for the proposition that snow removal work is explicitly excluded from the term "maintenance."

The plaintiffs responded by referring to the legislative history of 23 M.R.S.A. § 3659, which clearly indicates that the statute was intended to cover the type of complaints raised by them.

However, the court must first decide whether, as a matter of law, the statutory language has a "plain meaning." If it does, then that plain meaning will control. Only if there is ambiguity may the court consider the legislative history to determine its meaning.

Neither of the parties was able to cite a specific case in which the Law Court has defined the term "road maintenance." However, in *Goodine v. State,* 468 A.2d 1002 (Me. 1983), the Law Court held that snow removal activities did not fall within the term "street cleaning" found in 14 M.R.S.A. § 8104(4)[1] and explained the process for determining the meaning of words or terms:

> Words such as these which are not expressly defined in the statute must be given their plain and natural meaning and should be construed according to their natural import in common and approved usage. *Town of Arundel v. Swain,* 374 A.2d 317, 320 (Me. 1977), *citing Moyer v. Board of Zoning Appeals,* 233 A.2d 311, 317 (Me. 1967). The term "street cleaning" is commonly understood to mean the removal of debris which is generated

---

[1] 14 M.R.S.A. § 1404(4) contains one of the statutory exceptions to the general rule of governmental immunity to tort claims. In 1983, it stated that governmental entities would be liable for negligent acts or omissions causing property damage or personal injury arising out of and occurring during the performance of construction, street cleaning, or repair operations. It now states:

> A governmental entity is liable for its negligent acts or omissions arising out of and occurring during the performance of construction, street cleaning or repair operations on any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for the control of those ways including, but not limited to, street signs, traffic lights, parking meters and guardrails. A governmental entity is not liable for any defect, lack of repair or lack of sufficient railing in any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway or in any appurtenance thereto.

4

by pedestrian and vehicle traffic at all times of the year. Snow plowing, on the other hand, denotes the clearing (not cleaning) of snow and ice from the main portion of the roadway in order to create a lane of travel for motor vehicles. This distinction is as apparent to the citizens of Maine as it is to the Legislature which refers explicitly to the function of "snow removal" in a number of other statutory provisions. *See, e.g.,* 23 M.R.S.A. §§ 1001, 1003, 1007, 1010, 3201 (1980 & Supp. 1982-1983). The Legislature's failure to employ the same phrase in this instance evinces a clear intent to exclude snow removal functions from the scope of liability under section 8104(4). We decline in this case to adopt a forced construction of section 8104(4) which would extend its operation beyond what the Legislature intended and in clear contravention of the plain meaning of its terms. *See In re Belgrade Shores, Inc.,* 359 A.2d 59, 63 (Me. 1976). Accordingly, we conclude that the Superior Court was correct in dismissing the Plaintiffs' complaint against the City and the State under 14 M.R.S.A. § 8104(4).

*Goodine, supra,* at 1004. The City has urged this court to find that sanding and salting activities are excluded from 23 M.R.S.A. § 3659(1) because the Legislature did not refer to them specifically.

However, "road maintenance" is a much less specific term than "street cleaning." It is not defined in any of Maine's statutes, and a review of the statutes that refer to the maintenance of roads provides more questions than answers. For example, 23 M.R.S.A. § 751 states:

> The department shall provide a system of maintenance for all state highways to which section 1001 may apply and for all state aid highways to which section 802 may apply so that all sections of such highways may be effectually and economically preserved and maintained, in accordance with the best maintenance practice insofar as funds will permit. *This section does not include snow removal work on state aid highways or town ways.*

(Emphasis added.) This language leads to the reasonable conclusion that snow removal is not included within road maintenance operations. In addition, 23 M.R.S.A. § 1001 is titled "maintenance and snow removal on state highways," again suggesting that the two are separate activities. In 30-A M.R.S.A. § 7501, by contrast, snow removal is noted to be specifically included within the phrase "[c]onstruction, repair and maintenance of roads and bridges," and it is difficult to imagine how either "construction" or "repair"

could be stretched to include snow removal. Many of the other statutory references to snow removal are found within Title 23, Chapter 13, "Construction, Maintenance and Repairs," again suggesting that dealing with snow on the roads of Maine is a common maintenance activity.

In Michigan, road maintenance has been defined statutorily to include snow removal, grading, salting, controlling weed activity, or a related activity. M.C.L.S. § 224.19a(1)(b) (2003). In North Carolina, it means preservation, including repairs and resurfacing. N.C. Gen. Stat. § 87.101(10) (2003). Maintain is defined by the OXFORD AMERICAN DICTIONARY 400 (1980) as: "1. to cause to continue, to keep in existence. 2. to keep in repair." In Maine, a winter storm could easily cause a road to cease to exist, at least for a while, if snow and ice were not removed from its surface. However, an equally logical argument may be made that road clearing, sanding, and salting do not maintain a road; these activities merely allow the roads to be kept open.

Given the lack of clarity demonstrated above, the court determines that the meaning of "maintaining" is ambiguous. Therefore, the legislative history of 23 M.R.S.A. § 3659 must be considered. That history clearly shows that the legislature intended to provide a cause of action for landowners whose wells are destroyed or damaged by a municipality's road salting operations. The statute was codified in Public Law 1987, ch. 491, which contained the following Statement of Fact:

> [Title 23 M.R.S.A. § 3659] is modeled on the Department of Transportation well claims legislation, of the Maine Revised Statutes, Title 23, section 652. It is designed to provide the same protection for those whose water supplies are contaminated by municipal highway construction and maintenance, most notably road salting, as is currently provided by the State for the same activities on state roads.

As the quote above demonstrates, the type of claim raised by the plaintiffs is precisely the type of claim anticipated by the Legislature when it enacted this statute.

6

The Bouchards notified the City by letter that they were claiming to have been injured by its salting activities, not by any construction or repair actions; the letters were sufficient for that purpose under 23 M.R.S.A. § 3659. The complaint they filed was timely. Plaintiffs have pleaded a legally sufficient claim against the City in Count I of their complaint. Therefore, defendant's motion to dismiss that Count is denied.

2. Counts II, III, and IV

a. Governmental immunity

The plaintiffs' second, third, and fourth counts assert that the City's sanding and salting practices were negligent, and created a nuisance and a trespass, and that such operations either fall within one or more of the exclusions listed in 14 M.R.S.A. § 8104-A, or that the activities are covered by liability insurance. After review, the court finds that sanding and/or salting do not fit within any of the exceptions. The exception for road cleaning was deemed unavailable in the *Goodine* case, there is no allegation that the City's salting application is sudden or accidental, no public building is involved, and the vehicle exception is restricted to a vehicle's contact with the public. *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, 796 A.2d 674.

The only possible basis for asserting an exception to the general rule of immunity is insurance coverage. 14 M.R.S.A. § 8116 states, in pertinent part, that:

> The legislative or executive body or any department of the State or any political subdivision may procure insurance against liability for any claim against it or its employees for which immunity is waived under this chapter or under any other law. If the insurance provides protection in excess of the limit of liability imposed by section 8105, then the limits provided in the insurance policy shall replace the limit imposed by section 8105. If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage.

Defendant has asserted that it does not have insurance coverage for this type of claim, but that is not an issue that can be decided with this motion. Therefore, the defendant's

7

motion to dismiss Counts II, III, and IV of plaintiffs' complaint is granted in part. As a matter of law, the court finds that the City's sanding and salting operations do not fall within the exceptions listed in 14 M.R.S.A. § 8104-A. To the extent that plaintiffs may be able to prove that these operations are covered by an insurance policy, those claims may proceed.

b. Notice

The City has also argued that the plaintiffs failed to provide it with notice of its tort claim within 180 days after the cause of action accrued, as required by 14 M.R.S.A. § 8107. Based upon a review of the letters attached to the City's motion, the court is satisfied that the letters substantially comply with the notice requirements. Although the first letter was addressed only to the City, it reached the desk of the person responsible for investigating the claim. The City has not, and cannot, claim that it suffered any prejudice because the Bouchards failed to address their letters to the city clerk, treasurer, or manager. *Robinson v. Washington County*, 529 A.2d 1357 (Me. 1987). In addition, the City has not, and cannot claim any prejudice resulting form the Bouchards' failure to provide additional information in their letters. Mr. Metivier's responses to the letters demonstrate that the City understood the nature of the Bouchards' complaints and, based upon that information, undertook an investigation as to the City's liability. Again, no further notice was necessary. *Pepperman v. Barrett*, 661 A.2d 1124, 1126 (Me. 1995).

The City has also asserted that the Bouchards' April 28, 2003 letter must be regarded as untimely because their cause of action accrued before than six months earlier. However, sanding and salting are annual occurrences, and each season's activities may result in further contamination and/or a "continuing trespass or nuisance." *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me. 1996).

8

3. Motion to Amend

The City shall respond to the plaintiffs' motion to amend their complaint within twenty-one (21) days of this Order.

## ORDER

For the reasons stated above, defendant's motion to dismiss is denied as to Count I of plaintiffs' complaint, and granted, in part, as to Counts II, III, and IV.

The plaintiffs' motion to strike is granted as to the insurance policy attached to defendant's motion to dismiss, but denied with reference to the correspondence between the plaintiffs and the City.

The clerk is directed to incorporate this order by reference in the docket for this case.

Dated: _December 11, 2003_

_____
Ellen A. Gorman
Superior Court Justice

David Bertoni, Esq.
Daniel Nuzzi, Esq.
For the Plaintiffs

Marc N. Frenette, Esq.
Ronald Lebel, Esq.
For the Defendants

9